## Hazen *et al. versus* The Commonwealth.

1. The Supreme Court on application of defendants in a criminal proceeding may direct a writ of error to be returnable to another District than that in which the indictment was tried, the jurisdiction of the Court under the constitution extending over the state, and the Act of 14th April, 1834, dividing the state into judicial districts, not being designed and would be ineffectual to contract its limits.

2. A conspiracy entered into to induce and procure other persons to do an act prohibited under a penalty *by statute*, is an indictable offence, whether the object was effected or not.

3. In an indictment for such an offence the particular means by which it was to be accomplished, not being material ingredients in the offence, need not be set out in the indictment. *The conspiracy* to effect such an object is indictable, whether any acts be done in pursuance of it or not.

4. On error every material allegation in an indictment must be taken as true.

5. A conspiracy was indictable which was entered into to solicit, induce, and procure certain persons named, stated to be officers of a bank, and others, to violate and disobey the 48th and 49th sections of the Act of 16th April, 1850, prohibiting under penalties the circulation in Pennsylvania of foreign bank-notes of a less denomination than five dollars, one of them prescribing certain money penalties, and the other declaring the persons guilty of the offence to be also liable to *indictment*.

6. In an indictment for such offence the means by which it was to be accomplished need not be set out.

7. If an indictment contain several counts in only one of which an indictable offence is charged, it is sufficient after conviction generally to sustain the sentence.

ERROR to the Court of Quarter Sessions of *Allegheny county*.

The Supreme Court sitting at Harrisburg in the Middle District of the Court, on May 17, 1854, on application of counsel of defendants, granted a special allocatur in this case, returnable before the said Court on the 1st June, at Harrisburg, where the case was subsequently argued.

Hazen, Morris, Davis, and Lawson, two or more of whom were citizens of Ohio, were indicted for a conspiracy to solicit, induce, and procure the president, cashier, and directors of The Farmers' Deposit Bank of Pittsburgh, and other persons named, to violate the 48th and 49th sections of the Act of Assembly of 16th April, 1850, entitled An Act regulating banks. The 48th section provides that it shall not be lawful for any person or persons, corporation or body corporate, to issue, pay out, pass, exchange, or put in circulation, &c., any bank-note, note, bill, &c., issued or purporting to be issued by any bank or incorporated company or association of persons not located in Pennsylvania, of a less denomination than five dol-

[Hazen *v.* The Commonwealth.]

lars. It provides that every violation by a corporation shall sub‧ject it to the payment of $500; and a violation by a public officer shall subject him to the penalty of $100; and that the violation by any other person, not being a public officer, shall subject him to the payment of $25; one-half to go to the informer, and the other half to the county in which the suit is brought, and may be recovered as debts of like amount are recoverable.

In the 49th section it is provided that, in addition to the civil remedies imposed by the 48th section, every person who shall violate the provisions of that section shall be deemed to have committed *a misdemeanor;* and upon conviction may be fined in any sum not less than one dollar and not more than $100.

The indictment contained eleven counts. In the *first* count, the defendants were charged with a conspiracy to solicit, induce, and procure James Marshall, the president, and others named as directors, and John Magoffin, the cashier, of the Farmers' Deposit Bank of Pittsburgh, to violate and disobey the 48th and 49th sections of the Act of 16th April, 1850, referring to the Act by its title, &c., and setting out the said sections. In pursuance of which combination it was alleged that Davis deposited large sums of money not for the purpose of lawful business, and drew them by checks for unequal sums, and then and there unlawfully requested the said checks to be paid in bank-notes of a less denomination than five dollars, &c., and then and there caused to be passed to him and Morris a number of bank-notes of a less denomination than five dollars, and describing certain of the notes.

In the *second* count was charged a conspiracy to extort money from the president, cashier, and directors; and, as overt acts, referred to Davis' depositing money, and he and Morris drawing it out by checks for unequal sums, requesting the payment in small notes and procuring fourteen small notes, Hazen threatening to bring penal action unless the president, &c., paid $3250.

In the *third* count was charged a conspiracy to defraud the county of Allegheny, by an offer to compromise by taking half of the penalties.

In the *fourth* was alleged a conspiracy to extort money from John Magoffin, the cashier of the Farmers' Deposit Bank; and, amongst the overt acts, stated threats made to bring a great number of suits unless $3500 was paid by him.

The *fifth* was a general count, to induce the president, cashier, and directors of the Farmers' Deposit Bank to violate the 48th and 49th sections of the Act as aforesaid, and thereby then and there cause them to pay great sums of money and expose them to the pains and penalties of an indictment.

*Sixth* count. Conspiracy to extort money from the president, cashier, and directors of the Farmers' Deposit Bank of Pittsburgh, and payment of notes to defendants by said bank, and threats to bring suits unless $3500 was paid.

[Hazen v. The Commonwealth.]

In the *seventh* count—General count, to cheat and defraud the county of Allegheny; agreement to accept $3250. (In this count no time was laid within which the offence was committed.)

In the *eighth* count, conspiracy to cause Kramer, Rahm & Co., to violate the 48th and 49th sections of the small note law. Overt act—Morris and Davis going to their banking-house and buying currency; request of Morris to receive small notes; 40 notes paid out.

In the *ninth* count, conspiracy to induce Nathaniel Holmes and Thomas R. Holmes to violate the law. Overt acts—Morris and Davis going to the banking-house and purchasing $60 in small notes; requesting currency.

In the *tenth* count, conspiracy to induce H. D. King to violate the law. Overt act—Davis and Morris going to the banking-house of H. D. King and requesting small notes in exchange for par; 60 notes obtained.

In the *eleventh* count, conspiracy to induce the Allegheny Saving Fund Company to violate the law. Overt acts—Lawson furnishing money to his co-conspirators; David F. Davis opening an account with the bank and drawing money; Morris with him and present when the money is paid.

A motion was made to quash the indictment on the grounds as follows:—1st. That the indictment does not set forth an indictable offence. 2d. That in an indictment for conspiracy to accomplish an end or purpose by solicitation, inducement, and procurement, the means as set forth to be employed therefor ought to be charged in the body of the offence, and not as having been done in pursuance thereof, and it is not sufficient to charge them as overt acts. 3d. That the means or overt acts as charged, even if properly set forth, do not make any criminal offence, because they are not necessarily in pursuance of such conspiracy. 4th. That the offence charged is a conspiracy to do a legal act by illegal means, and in such cases the indictment should show on its face the means alleged to have been used, and they should of themselves be illegal.

In support of the motion, reference was made to the cases of Commonwealth *v.* Hunter, 4 *Metcalf* 125; People *v.* Lambert, 9 *Cowen* 594, 53 *Com. Law* 806, 808; Randolph *v.* Commonwealth, 6 *Ser. & R.* 398; Hartman *v.* Commonwealth, 5 *Barr* 60; Megargell *v.* Hazleton Coal Company, 8 *W. & Ser.* 346. *Wharton's Criminal Law* was referred to to show the propriety of making this motion, at this stage of the case.

On part of the *Commonwealth*, reference was made to the opinion of GIBSON, J., in Commonwealth *v.* Carlisle, *Brightly* 36, 39, 40; 3 *Greenleaf's Ev.* 82, as to the definition of conspiracy; also Commonwealth *v.* Spearing *et al.*, *Brightly* 315.

April 15, 1854, verdict of guilty on all of the counts except the *ninth.* A motion was made for a new trial, and in arrest of judgment. A number of the reasons assigned applied to the admission

of testimony, and others to the charge of the Court.   The reasons assigned for an arrest of the judgment, were

1. All the counts in the indictment are defective for vagueness and want of precision in the description of the offence; and there is no offence duly, properly, and legally set forth in the indictment.

2. All the counts are defective, in not stating, in the charging part of the indictment, the means concerted or agreed upon for accomplishing the object of the alleged conspiracy.

3. None of the acts of the defendants, set forth in the various counts of the indictment, having been done in pursuance of the alleged conspiracy, are in themselves illegal, wrongful, or unusual, or reasonably tending to coerce the will of the subjects of said conspiracy, or to influence or tend to influence them to a violation of the law prohibiting the issuing of foreign bank-notes of a less denomination than five dollars.

4. The third and seventh counts of the indictment charging a conspiracy to defraud the county of Allegheny out of her share of the penalties, are defective, in not averring such matters and things as would show that, under the statute, said county had acquired an interest in, or right to, any portion of said penalty; and in not averring that the county had an interest therein; and there is no offence known to the law set forth in said counts, which do not charge a conspiracy at common law, to defraud by means of false tokens; or by statute, to defraud by means of false pretences.

5. The counts charging the defendants with having conspired "to solicit, induce, and procure" the corporations and brokers therein named to issue such notes, are defective in not describing the means whereby that object was to be effected; as, for example, falsehood, threats, intimidation, promises of secrecy, or any acts calculated to coerce the will of the subjects of said conspiracy.

6. The counts charging the defendants with having conspired to extort money from the Farmers' Deposit Bank, or J. Magoffin, the cashier thereof, are bad and defective, for vagueness and want of precision in the description of the offence; and also in not describing the means concerted for accomplishing the object; and because the overt acts of the defendants, stated to have been done in pursuance of said conspiracy, are not unlawful, or reasonably tending to coerce or affect the will of the subjects thereof, so as to induce them involuntarily to pay money.

7. In the fourth count no time is laid, at or within which the offence was committed.

8. In the seventh count *Andrew* T. Lawson, and not *David* T. Lawson, is charged to have committed the offence.

Verdict of guilty against all of the defendants upon all the counts in the indictment except the *ninth.*

The judgment was arrested on the 4th and 7th counts.   Each of the defendants was sentenced to pay a fine of $100 and the costs, and to imprisonment in the jail for three months.

[Hazen v. The Commonwealth.]

Counsel for the Commonwealth were *Roberts*, District Attorney, *Flanegin*, *Hampton*, *Howard*, and *Stokes*.

For the defence.—*Darragh*, *G. P. Hamilton*, *T. B. Hamilton*, and *Ewing*.

It was assigned for error, 1. The Court erred in overruling the motion to quash the indictment; 2. In overruling the motion in arrest of judgment, and in entering judgment.

*G. P. Hamilton*, for the plaintiffs in error.—The indictment contains eleven counts, which, for convenience, may be divided into three classes, according to the nature and objects of the alleged conspiracies. In the first class the defendants are charged with having unjustly combined, conspired, confederated, and agreed together, to "induce, solicit, and procure" James Marshall, president, and the other officers of the Farmers' Deposit Bank, Henry Irwin, president, and the other officers of the "Allegheny Saving Fund Company," Kramer & Rahm, brokers, and N. Holmes & Son, brokers, to violate and disobey the 48th and 49th sections of the Act of 16th April, 1850, prohibiting the issuing and circulating of notes of foreign banks of less denomination than five dollars. The above is substantially the charging or conspiracy part of the counts included under the first class. The various counts included in this class set out the following as the overt acts done in pursuance of the conspiracy, viz.: depositing with the banks and brokers named, sums of money and checking the same out in uneven sums, so as to compel, in the language of the indictment, the subjects of the alleged conspiracy to pay out the fractional portions of said checks in unlawful money.

We allege that the counts embraced in this class are defective for vagueness and want of precision in the description of the offence; and that they do not set forth any offence at all—cited case of Hartman v. The Commonwealth, 5 *Barr* 60; Regina v. Parker, 43 *E. C. L. R.* 741; 1 *P. & Dav.* 508; 9 *Cowen* 578; 1 *Cushing* 189, Commonwealth v. Eastman. The case of O'Connell v. The Queen, was cited to the point that the word *intimidate* did not necessarily import a bad sense. Neither do the words "induce and solicit" used in this indictment. To constitute a conspiracy, the purposes to be effected by it must be unlawful; and where the object is not unlawful, but the means of effecting it are so, the means should be set out in the confederacy part of the indictment: 4 *Metcalf* 125, Commonwealth v. Hunt; 9 *Cowen* 594, People v. Lambert. Though the object attributed to defendants was to induce a violation of law, yet it was manifest that the ultimate object was to obtain the penalties, and if so, the design was not unlawful in its nature and object: 3 *Greenleaf* 89; and where a

[Hazen *v.* The Commonwealth.]

conspiracy consists in the means of accomplishing its object, the means must be unlawful *per se*, and they must be set out.

2d class.—In the *second* class of counts is charged a conspiracy to *extort* sums of money from John Magoffin, cashier, &c., and from the bank itself. Hawkins says, "extortion is the taking of money by a legal officer, by color of his office, that is not due, or more than is due." In this indictment the term is not used in its technical or common law signification, but in its usual and ordinary meaning. If this were an indictment for the perpetration of the offence, it would have to set forth the acts and circumstances of which the offence was constituted: Hartman *v.* Commonwealth, 5 *Barr*. If the overt acts charged were set forth in the confederacy part of the indictment, as descriptive of the offence, they would not amount to extortion technically or morally.

3d class.—In the *third* class of counts is charged a conspiracy to defraud *the county of Allegheny* out of her share of the penalties incurred by the Farmers' Deposit Bank in issuing the fourteen small notes described in the indictment. The overt acts charged under this branch of the conspiracy, consist in Hazen going to Wellsville in company with some of the officers of the bank, and there proposing to compromise by taking less than one-half of the whole penalty, and to burn or destroy the evidences of the bank having issued the notes. The indictment does not aver that the county of Allegheny had acquired any interest in the penalties incurred by the bank, nor does it allege that an action had been brought by any of the defendants to recover said penalties, or by anybody else: Commonwealth *v.* Hartman referred to. Unless the county had an interest in these penalties, a conspiracy to defraud her out of them would be impossible. In indictments for conspiracy to defraud another of his property, there must be an averment of title and ownership, and an identification of the property: Rex *v.* Fowle, 4 *Car. & Pay.* 592; Regina *v.* Kendrick, 9 *Ad. & Ell.* 686 (36 *E. C. L. R.*); Regina *v.* Parker, 43 *Common Law* 741. The cases of Lambert *v.* The People, 9 *Cowen* 578, and Commonwealth *v.* Eastman, 1 *Cushing* 189, are authorities against the sufficiency of the counts included in this class.

Until action brought, the right to the penalty is ambulatory, and it cannot be predicated of any county or individual, that either has an interest in it. The action, too, like all other personal actions, is transitory, and may be brought in any county of the Commonwealth where a legal service may be had. But the Court below, on the authority of Brobst *v.* Bank of Pennsylvania, 5 *W. & Ser.* 379, held that the action for the penalty, if brought at all, must be brought in the county of Allegheny, and that, therefore, the county had acquired an interest in the penalty, the moment it was incurred by the bank. The case referred to does not establish

[Hazen v. The Commonwealth.]

any such principle. The county could not be defrauded out of that which did not belong to it. The substance of the charge to defraud the county of Allegheny, consisted in an offer to compromise with the bank before suit brought by taking less than half of the whole penalty, and yet it is held in the case of Megargell v. Coal Company, 8 W. & Ser. 342, that a qui tam plaintiff may discontinue, receive and give acquittance, and may proceed or not, · as he pleases, with the action.

Roberts and Stokes, on part of the Commonwealth.—Though not contested in this case, it was not admitted that the return in this case was regular.

As to the allegation of vagueness, &c., in the counts, it is too late after trial on the merits. In the case of Commonwealth · v. Hunt, 4 Metcalf 125, it was held, that, under proper circumstances, the Court may order a bill of the proof intended to be relied on to be furnished to the prisoners. So also in R. v. Kenrick, 5 Ad. & E. 49; R. v. Hamilton, 7 C. & P. 448. Though persons may conspire to do an act injurious to the community or to individuals, if it be necessary to set out the acts agreed on by conspirators, yet, if they be not agreed on beforehand, they could not be convicted though they participated in them, and though they accomplished their object. There are offences created by statute relating to matters not immoral in themselves, but for the public good forbidden: King v. Lynn, 2 Term Rep. 723, case of a combination to take up dead bodies for scientific purposes. Conspiracies to do things forbidden by statute are indictable, without regard to the means made use of: 3 Harris 272; Whart. Crim. Law 674. The case of Rex v. Gill, 2 B. & Ald. 204, questioned or overruled in Rex v. Biers, 1 Ad. & El. 327, has since been affirmed. In an indictment for a conspiracy to commit an indictable offence, the means used need not be set out; but where the offence charged is not indictable, they must be stated: Whart. Crim. Law 675; Lewis Crim. Law 224; Id. 655; 8 Ser. & R. 420. An indictment is sufficient which simply avers that the defendants conspired together to cheat and defraud a bank of its moneys: Commonwealth v. Foering, 6 Law J. 281. Reference was also made to 3 Harris 272; 4 Barr 210; 2 Parsons 341; 9 Barr 211; 5 W. & Ser. 461.

The object of the defendants was not to obtain the penalties; such position is negatived by the verdict.

That to solicit, induce, or procure the doing of an indictable offence is itself indictable, reference was made to Rex v. Higgins, 2 East 5; Rex v. Vaughan, 4 Burr. 2494; Rex v. Plympton, 2 Lord Raymond 1377; Young's Case, 2 East 14–16; Rex v. Butler, 6 C. & P. 368; Rex v. Roderick, 7 C. & P. 795; 1 Russell on Cr. 46; 1 Hawkins 25, s. 3; State v. Knapp, 6 Conn.

[Hazen *v.* The Commonwealth.]

415; State *v.* Danforth, 3 *Conn.* 112; State *v.* Avery, 7 *Conn.* 267. And the particular means intended or used need not be set out in the charging part of the indictment, where the object of conspiracy is to induce the commission of an indictable offence: State *v.* Bartlett, 36 *Maine* (17 *Shep.*) 132; People *v.* Brush, 4 *Hill* 133; State *v.* Murray, 15 *Maine* 100; Commonwealth *v.* Harrington, 63 *Bick.* 26; Damarest *v.* Haring, 6 *Cow.* 76; State *v.* Keys, 8 *Verm.* 57; State *v.* Taylor, 3 *Brevard* 243; *Whar. Crim. Law*, p. 38, last edition; 4 *Wend.* 263.

The term *extort* necessarily implies the adoption of illegal means: 6 *D. & R.* 345. A conspiracy to extort money is *per se* an offence at common law, and need not be charged to be attempted by unlawful means: 6 *D. & R.* 345; 4 *B. & C.* 329; 13 *Law Jl.* 131; 8 *Jur.* 662. It is indictable to attempt to extort *hush-money*, whether the charge be true or false : 7 *Boston L. R.* 58, Commonwealth *v.* Woods; *Whar. Crim. Law* 542.

If the county of Allegheny had no right to the penalties, the defendants had none, and their pretence of claim was false. But the county had an interest, for there the place of business of some of the corporations was located, and there the liability was incurred, and the indictment charges a conspiracy to defraud the county. The 49th section of the Act of 1850 declares the passing of the notes in question a misdemeanor, and it is punishable only in the county where it was committed. But whether the allegation were true or false, and whether the conspiracy resulted in injury or not was not material. The offence was complete when the corrupt engagement was closed.

The opinion of the Court was delivered, July 19, 1854, by.

Lewis, J.—This case came before us at the Middle District, on a writ of error directed to the Court of Quarter Sessions of Allegheny county. As that county is part of the Western District, a question arises in relation to the power of this Court to hear and determine the cause out of its proper place. It is true that the parties do not raise the question; but as their consent cannot give jurisdiction, we are bound to ascertain, before we proceed, how far we have authority over the case. By the fourth section of the fifth article of the Constitution, it is expressly declared that the "jurisdiction of the Supreme Court shall extend over the state." As the Constitution itself fixes the extent of our jurisdiction, it is plain that an Act of Assembly cannot contract its limits. But the Act of 14th April, 1834, dividing the state into districts, was not designed to circumscribe the jurisdiction of the Court. The object was merely to give suitors the privilege of having their cases heard within convenient distances from the places in which they originated, and, where, generally, the parties are presumed to reside. This, like any other advantage, may be waived with the

[Hazen *v.* The Commonwealth.]

consent of the Court. There is nothing in the statute which is repugnant to such a waiver. The Act of Assembly requires the Supreme Court to be held at stated times annually in the several districts. This has always been done; so that the statute, in that particular, has been satisfied. But justice may sometimes require that a case be taken up out of its proper district. A delay which works irreparable mischief is sufficient to call for the exercise of this power, under the constitutional injunction that "justice shall be administered without denial or delay." So, an abuse of process or a mistake in entering a judgment has been deemed sufficient to justify the interference of the Court, although, at the time, not sitting in the district where the mistake or abuse occurred. In one instance we have made an order in the Eastern District to grant relief against process issued on a judgment erroneously entered in the Western District; and it is a common practice to pronounce judgments in one district on causes originating in another. In the case now before us, as the parties make no objection, and as our jurisdiction over them and over the subject-matter in controversy is not doubted, the propriety of exercising it in the manner proposed is to be decided by considerations of expediency alone. As the punishment imposed by the sentence would be fully suffered and ended before the cause could be reached in the ordinary course, and this would produce injustice, if erroneous, for which there is no adequate redress, we deem it our duty to proceed to the examination of the record returned.

An indictment lies not only where a conspiracy is entered into for an illegal purpose, but also where it is to effect a legal purpose by the use of unlawful means; and this, although such purpose be not effected: 2 *Lord Ray.* 1167; 8 *Mod.* 11; 6 *Mod.* 185; 8 *Ser. & R.* 420; 4 *Met.* 126; 2 *Russ. & M.* 553. Where the object itself is unlawful, the means by which it is to be accomplished are not material ingredients in the offence; and, therefore, in such a case it is never necessary to set them forth. The offence is complete the moment the conspiracy is made, whether any acts be done in pursuance of it or not. Such acts form no part of the offence, and the statement of them in the indictment is but surplusage.

It is by no means necessary that the object to be accomplished should be *malum in se.* It is sufficient if it be made criminal or even be prohibited under penalties by statute. The indictment against workmen for a conspiracy to defeat the operation of the Act of Parliament regulating their wages, and that for a conspiracy to violate the Acts of Assembly prohibiting the sale of lottery tickets, were sustained on this principle: 8 *Mod.* 10; 4 *Met.* 128; 7 *Ser. & R.* 476. In an indictment for a conspiracy to do an act prohibited by the *common law,* where the act has a specific name which indicates its criminality, it is not necessary to describe it minutely. But it has been thought that where the *object* of the

conspiracy is merely forbidden by *the statute*, it can be described only by its particular features : Commonwealth *v.* Hartman, *Lewis' U. S. Crim. Law* 223. But even in offences of this character it has never been held necessary to set forth the unlawful object with the precision required in an indictment for perpetrating it. It is the *conspiracy* and not the *object* sought to be accomplished by it that is the subject of indictment. Where the indictment is for *an act* done, it is always in the power of the prosecutor to lay it with certainty ; and this the accused has a right to require, as well for the purposes of his defence as for his protection against a second prosecution for the same cause. But this reason does not extend to an object *which may never have been accomplished,* and which is not the *gist* of the offence charged, although an essential ingredient in it : Commonwealth *v.* Gillespie, 7 *Ser. & R.* 475–6.

Let us apply these principles to the case before us. It is scarcely necessary to say that we cannot re-judge the *facts.* These we must take to be conclusively established by the verdict. Every material allegation in the indictment must, on error, be taken for absolute verity. The verdict on the first count, therefore, conclusively establishes the facts that the defendants below entered into a conspiracy to "solicit, induce, and procure" certain persons therein named, and stated to be officers of the Farmers' Deposit Bank of Pittsburgh, to violate and disobey the 48th and 49th sections of the Act of 16th of April, 1850. Those sections are fully set forth. One of them prohibits the circulation of what are commonly called foreign bank bills of a less denomination than five dollars, under certain penalties to be sued for as debts of like amount are recoverable. The other contains the same prohibition under the penalty of indictment in the Criminal Courts for a misdemeanor. The count referred to also sets forth in language which plainly brings the case within the statute, the particular acts of violation which it was the object of the conspiracy to "cause and procure." There can be no doubt that the statute prohibiting the circulation of foreign bills, under the denomination of five dollars, is founded on the soundest policy, and that the public interest would be greatly promoted by its faithful observance. A conspiracy to defeat its operation is a combination against the public welfare, and we can have no hesitation in declaring that such a conspiracy is an indictable offence. If the first count contained nothing more than this charge, the offence would be complete. But it goes farther. It avers that the purpose of the conspirators, in causing the officers of the bank to violate the Act of Assembly, was to compel them "*unjustly and unlawfully*" to *pay large sums of money "for the corrupt gain"* of the conspirators. If the object was merely to compel the payment of the penalties by a *bonâ fide* prosecution for them, the offence of inciting persons to violate the law remains. But a recovery of the

[Hazen *v.* The Commonwealth.]

penalties, even in that case, would not be "unlawful." We are, therefore, left to infer that the "large sums of money" were to be obtained by some other means than a fair prosecution of the offenders. In a subsequent part of the indictment it appears that the money was to be drawn from the victims by *compounding their offences.* If the object was merely to detect and bring to punishment suspected violators of the law, there was nothing indictable in the transaction. Norden's case in *Foster's Crim. Law* 129, and many other cases in detecting post-office larcenies and other offences, are instances of this. But it was the business of the plaintiffs in error to show on the trial the lawfulness of their acts. They had their day in Court for this purpose. The mistake of the jury, if there be one, cannot be corrected here. A writ of error reaches nothing but the errors manifest upon the record. The evidence submitted to the jury is no part of the record, and is, therefore, not before us. It is found as a fact that the object of the defendants below was not the detection and suppression of crime, but the promotion of their own *corrupt gain.* The idea of procuring the violation of the law for the purpose of detecting and punishing suspected offenders, nowhere appears upon the record. On the contrary, this motive is entirely excluded by the averments in the indictment, all of which the jury have found to be true. It is not material whether the "corrupt gain" of the conspirators was to be secured by recovering the informer's share of the penalties, or by receiving money to suppress prosecutions for the offences committed. In either case there can be no doubt of the criminal character of the transaction. The double iniquity of inducing a person to commit a crime, and then extorting money from him to suppress a prosecution for it, is such a plain violation of public and private rights, that it requires no argument to show that a conspiracy to promote such an object is indictable. The act of inducing a person to commit an offence for the purpose of recovering the penalties against it, may be less in the degree of its enormity, but it is in principle the same. It is an offence not unlike that which was punished in the case of King *v.* McDaniel *et al., Foster's Crim. Law* 130. In that case there was a conspiracy to procure persons to commit a robbery upon *one of the conspirators,* for the purpose of obtaining the rewards given by Act of Parliament for the conviction of highway robbers. Although the means used to induce the perpetration of the robbery were not more seductive than those adopted in the case before us, the prisoners were convicted of the conspiracy, and the conviction, upon the fullest consideration, was affirmed. They were set in the pillory twice, and committed for seven years. But the offence of inducing others to commit crimes for the purpose of obtaining the rewards given for their conviction, was so abhorrent

[Hazen *v.* The Commonwealth.]

to public feeling, that one of them lost his life in the pillory through the resentment of the populace : *Foster* 130.

It is true that the means made use of to prevail over the virtue of the victims, in this case, were not such as could have succeeded with persons of ordinary devotion to the law. But as the *conspiracy itself* is indictable, without regard to the result or to the means used to effect it, the facility with which the result was effected may prove that the officers of the bank were unable to. resist a very slight temptation; but it is far from extinguishing the guilt of the conspirators. Their offence is none the less because aimed against persons too weak to resist a small temptation. If the means resorted to had failed, there is no reason to believe that the conspiracy would have been abandoned. On the contrary, as the plaintiffs in error had bound themselves together to accomplish the unlawful object, the presumption is, that .if one measure failed, another more effective would have been adopted. But all this is immaterial, for, as already said, neither the final result, nor the means used to effect it, vary the legal character of the offence.

We are of opinion that the first count charges an indictable offence. As this is sufficient to sustain the sentence, it can make but little difference to either party in what manner the remaining counts are disposed of. In the Commonwealth *v.* McKisson, 8 *Ser. & W.* 420, where, on error, one count was found to be sufficient, it was not deemed necessary to express an opinion on the others. But we may certainly look into the whole record for the purpose of ascertaining, for our own satisfaction, how far the present decision accords with the real justice of the case. In one count, the jury have found that the plaintiffs in error caused the officers of the bank to violate the statute, and then threatened them with a great number of actions for penalties (amounting in the aggregate to $20,000), unless they would pay the sum of $3000 to the conspirators. In another count the jury have found that the plaintiffs in error actually offered, for the sum of $3000, to bind themselves against bringing any action for penalties, and to "tear up, burn, and destroy" the evidences of fourteen violations of the law, in which the penalties amounted to the sum of $70,000. These facts show that their object was not the detection and punishment of offenders, but the promotion of their own corrupt gain, and that to accomplish their purposes they entered into a combination to prostitute the law and its process. It is plain that they sought to extort "hush-money" for suppressing the evidences of guilt, and thus defeating the object and policy of the statute. Their proceedings, as spread upon the record, have not the least smack of a *bonâ fide* prosecution in support of the policy of the law. Those who bring offenders to punishment are entitled to a share of the rewards offered, because they render their services to

[Hazen v. The Commonwealth.]

the public in suppressing the mischief. But those who induce a violation of the law, for the purpose of compounding the offence and making gain by defeating public justice, are guilty of a gross public wrong. A conspiracy to effect such an object is clearly indictable.

The judgment of the Court of Quarter Sessions is affirmed.