# COMMONWEALTH v. IRA MYERS ET AL.

### APPEAL BY IRA MYERS FROM THE COURT OF QUARTER SESSIONS OF CLARION COUNTY.

Argued October 8, 1891—Decided January 4, 1892.
[To be reported.]

1. It seems, an indictment for a conspiracy to abduct a child, under § 94, act of March 31, 1860, P. L. 405, not averring the name or sex of the child and that it was under the age of ten years, and an intent to deprive its parent, or other person having lawful charge of it, of its possession, or to steal any article of apparel, etc., upon it, is defective.
2. An indictment will not lie, under said section, against a father who peaceably obtains possession of his own child, or against others assisting him at his request: Burns v. Commonwealth, 129 Pa. 138. Not will such assistance of other persons constitute an indictable conspiracy, when no unlawful means are agreed upon or used.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 57 October Term 1891, Sup. Ct.; court below, No. 8 November Term 1890, Q. S.

### Statement of Facts.

On November 11, 1890, the grand jury returned as a true bill an indictment in two counts against Elizabeth Myers and Ira Myers, the first count charging that on July 6, 1890, the said defendants, with other persons unknown, " wickedly devising and intending to kidnap, decoy, and carry away a certain child, then and there under the protection, control, and authority of one Jessie Myers," did fraudulently, maliciously and unlawfully conspire, combine and confederate together, " by trick, artifice, and fraud, and by fraudulent means, to lead, take and carry away the child aforesaid from the possession of the said Jessie Myers," contrary to the form, etc.   The second count, after averring a conspiracy in the same terms, averred further that, in pursuance thereof, the defendants and said other persons, on the day and year aforesaid, " by force and arms, trick, artifice, and fraud, and by fraudulent means, did abduct, take and carry away the said child from the possession, control and authority of the said Jessie Myers," etc, contrary, etc.

A motion to quash the indictment having been overruled, the defendants pleaded not guilty.

At the trial, on November 17, 1890, the testimony for the commonwealth tended to prove the following facts:

Ira Myers, one of the defendants, and Jessie Myers, were the parents of the child mentioned in the indictment.   They had been husband and wife, but were divorced prior to the transaction which was the subject of the prosecution.   When they separated, an agreement was made between them that Mrs. Myers should have possession of the child.   On July 2, 1890, she was residing with her father, in Clarion county, and had the child, then between two and three years old, at his house.   ·Ira Myers resided in the same county.   The other defendant, who was his mother, resided in Venango county.   On the day named, two unknown men came to the house of Jessie Myers' father in a buggy.   One of them entered the house on pretence of wishing to sell a book, and after obtaining admission picked up the child and carried it out to the buggy, when the two men drove off with it.   The same night, Ira Myers appeared with the child at the house of a neighbor; shortly after, he took it to the house of one D. McKibbin in Clarion county, and left it there under an arrangement that McKibbin's

Charge of Court below.

wife should take care of it for him. He stated to Mrs. McKibbin, apparently on another occasion, that "it was naked and starving, and he had taken it away to have it properly cared for." Some time in the year 1889, Ira Myers had offered W. M. Myers five hundred dollars if he would go and steal the child, and on being asked what he wanted with the child, replied : "She is an heir, and I have to have her." The buggy in which the child was taken away by the two men, had been hired by them at a livery stable in Clarion county. It was found on the morning of July 3d, by its owner, at the residence of Elizabeth Myers in Venango county. She disclaimed having anything to do with hiring it, but on threats that, if the bill for its hire was not paid, some arrests would be made, she paid it. Declarations made by her, to the effect that the child had been brought to her place in a ragged and dirty condition, and that she had bought and made some clothes for it, were shown.

For the defence, Elizabeth Myers testified denying that she was a party to any conspiracy to abduct the child, and called other witnesses who testified to her good reputation. A Mrs. Creidler was called, also, for the defence, and testified that on a morning in July, 1890, said in the commonwealth's history of the case to be the morning after the taking of the child by the two unknown men, Ira Myers came to the house of the witness in Oil City, Venango county, with the child, which had on a very dirty dress and no shoes, and asked the witness to make some clothes for it ; that the witness made two dresses and a skirt for it, and Ira got it a pair of shoes.

The testimony being closed, the court, WILSON, P. J., after giving instructions respecting the law of criminal conspiracies and the rules regulating their proof, read to the jury that part of § 94, act of March 31, 1860, P. L. 405, making the abduction of any child under the age of ten years, with intent to deprive its parent or parents, or other person having its lawful charge or care, of its possession, etc., a misdemeanor.[3] The notes of the trial filed showed that at this point defendants' counsel asked the court to read to the jury the proviso to said section, excepting from its operation the case of a person claiming to be the father of any illegitimate child, or to have any legal right to the possession of such child, and getting it out of the

Charge of Court below.

possession of the mother or other person, etc., and that said proviso was not read.[4]    The bill of exceptions, however, did not exhibit such request.    The court charged, further, as follows :

The defendants' counsel have presented requests to the court for instructions to the jury as follows :

1. That an intention to do evil is necessary to constitute the crime of conspiracy, and there being no evidence of any evil intent by the defendants, in this case, toward the prosecutor, there must be a verdict of acquittal.

Answer: The first part of this point properly expresses the law on this subject.    The point is divisible ; the first part of it is affirmed and the second part refused.[5]

2. That, to constitute the crime of conspiracy, in this case, the jury must be satisfied beyond a reasonable doubt that there was a corrupt confederation between the defendants to defraud.

Answer: Refused, as it does not fully state the law on the subject.[6]

3. That there can be no conviction, in this case, for the reason that there is no evidence of any conspiracy between these defendants, to wit, Elizabeth Myers and Ira Myers.

Answer: Refused.[7]

4. That, even if there was a conspiracy between Ira Myers' and the two strangers referred to, the evidence on the part of the commonwealth shows that conspiracy to have been in the county of Venango, and there can be no conviction in this case.

Answer: Refused, because there is evidence for the jury to show that this court has jurisdiction in the case.[8]

—The jury returned a verdict of not guilty as to Elizabeth Myers, and guilty as indicted as to Ira Myers.    Ira Myers then filed a motion in arrest of judgment, assigning the following reasons :

1. The ninety-fourth section of the act of assembly of 1860, under which the indictment in this case is drawn, has no application to contests between parents for the possession of their children.

2. Under the evidence in the case, the defendant, Ira Myers, having secured the possession of his child without a breach of the peace, he was neither a criminal nor guilty of any indictable offence under the said act of assembly, and therefore the judgment should be arrested.

Arguments.

3. That defendant, Ira Myers, having obtained possession of his child in a peaceable manner, under the evidence, he is neither a criminal, nor was such possession unlawful under the said act; and he could not, in such peaceable manner obtaining possession of his child, be guilty as a conspirator or co-conspirator under the law, and therefore the judgment in the case should be arrested.

—After argument, the court overruled the motion in arrest of judgment,[9] and sentenced the defendant, Ira Myers, upon the first count of the indictment, to pay a fine of three hundred dollars and the costs of prosecution, and to undergo imprisonment in the western penitentiary at labor for one year and six months, suspending sentence upon the other count. Thereupon the defendant, having obtained a special allocatur, took this appeal, specifying inter alia that the court erred:

3. In reading to the jury but part of § 94 of the penal code.[3]

4. In not reading, also, the proviso to said section.[4]

5–8. In the answers to defendants' points.[5 to 8]

9. In refusing the motion in arrest of judgment.[9]

*Mr. M. A. K. Weidner*, for the appellant.

All the testimony shows that the child in question was the child of Ira Myers and his divorced wife, Jessie Myers, born in lawful wedlock. The taking of a child by its father is not in itself unlawful; and therefore, his employing another to take it for him does not constitute an indictable conspiracy: King v. Seward, 1 Ad. & E. 706; Commonwealth v. Ridgway, 2 Ash. 247; Burns v. Commonwealth, 129 Pa. 138. And it was the duty of the court to instruct the jury that there could be no conviction: Commonwealth v. Ridgway, supra; Penna. R. Co. v. Werner, 89 Pa. 59. The statute read to the jury had no application: Burns v. Commonwealth, supra; and the reading of it was simply misleading, especially without the proviso.

*Mr. John W. Reed* (with him *Mr. G. G. Sloan*, District Attorney, and *Mr. Harry R. Wilson*), for the Commonwealth:

The question is not whether the defendant or his confederates could be indicted for kidnapping the child, but whether an indictment will lie against them for conspiracy to use fraud

and deception upon the mother, and by means thereof to acquire its possession and deprive her of it. Such an indictment is supported by the authorities: Mifflin v. Commonwealth, 5 W. & S. 461; Morris Run Coal Co. v. Coal Co., 68 Pa. 187; Hood v. Palm, 8 Pa. 239; Commonwealth v. Carlisle, Bright. 40. Under § 3, act of May 4, 1855, P. L. 430, the mother was entitled to the exclusive control and custody of this child. But, conceding that the father himself could not be indicted under § 94, act of March 31, 1860, P. L. 405, it does not follow that other persons, hired by him, can perpetrate the abduction without offending the law, and a conspiracy to induce others to violate a penal statute is indictable: Hazen v. Commonwealth, 23 Pa. 355; Commonwealth v. Putnam, 29 Pa. 296.

OPINION, MR. JUSTICE McCOLLUM:

The appellant, Ira Myers, and his mother, Elizabeth Myers, together with divers other persons whose names were to the inquest unknown, were indicted for conspiring to "kidnap, decoy, and carry away a certain child 'under the protection, control, and authority of one Jessie Myers," and for taking said child, in pursuance of the conspiracy, from the possession of "the said Jessie Myers."

The case was evidently regarded in the court below as an indictment for a conspiracy to commit the offence described in the ninety-fourth section of the act of March 31, 1860, P. L. 405, and for the commission of the offence in pursuance of the conspiracy. The indictment is defective in several particulars. It does not disclose the name or sex of the child. It does not allege that the child was under the age of ten years, or that the accused intended to deprive its parent or parents, or other persons having the lawful charge of the child, of the possession of it, or to steal any article of apparel, or ornament, or other thing of value or use upon or about its person. An indictment which omits these essential ingredients of the statutory offence should be quashed on motion.

But, turning from the defective indictment to the equally defective proofs offered to sustain it, we find that the appellant is the father of the child, and that the unknown persons assisted him in obtaining, without violence or a breach of the peace, possession of it. It is admitted that an indictment will not lie

against him for taking peaceable possession of his own child, nor against them for aiding him in doing so; but it is seriously contended that their agreement with him to render the assistance he sought, constituted a conspiracy to violate the ninety-fourth section of the act to which reference has already been made. A conspiracy entered into to induce and procure other persons to do an act prohibited by statute, is an indictable offence, whether the object is effected or not: Hazen v. Commonwealth, 23 Pa. 355. And so is a conspiracy to commit an assault and battery: Commonwealth v. Putnam, 29 Pa. 296. A conspiracy to cheat by offering to sell forged foreign bank notes of a denomination the circulation of which is prohibited in this state, is also indictable: Twitchell v. Commonwealth, 9 Pa. 211. But, the case at bar is not governed by or analogous to the cases cited, because the agreement which is called a conspiracy, was not to violate a penal statute or to commit a common law offence.

The ninety-fourth section of the act of 1860 is not applicable to an effort by a father to obtain peaceable possession of his child, nor to the parties who at his request assist him in effecting his object: Burns v. Commonwealth, 129 Pa. 138. If he commit an assault and battery, or a breach of the peace in execution of a purpose which is not criminal, he may be indicted and punished for it; and if he conspire with others to commit these offences, as a means of obtaining possession of his child, an indictment for conspiracy will lie against them. But he may request and accept assistance in securing possession of it, without violating the statute in question, or committing an indictable offence. In such case, neither he nor the parties aiding him can be held as criminals, if unlawful means are not agreed upon or used to accomplish their purpose. In Burns v. Commonwealth, supra, it was distinctly ruled that Gregory and the parties aiding him were not within the purview of the act of 1860 in relation to kidnapping. It is decisive of this case, because there is no material distinction between them, as to the action of the parties or the motives which prompted them.

> The judgment is reversed, and the appellant, Ira Myers, is discharged.