## Commonwealth v. Eshleman et al.

*Abduction or kidnapping—Indictment for—When insufficient.*

An indictment which merely avers that the defendants "did forcibly abduct and steal away one James Ellwein, then in the legal custody of one W. A. Fetrow, and sent him, the said James Ellwein, into another country and state," is defective, in that it does not aver the age or sex of the person abducted, or an intent to deprive the person having legal custody of possession of such person, or to steal any article of apparel, or extort money, or state what was the purpose of the abduction.

Demurrer to indictment and motion to quash. Q. S. Lancaster Co., Jan. Sess., 1922, No. 32.

*J. Andrew Frantz*, for demurrer and motion.

*William C. Rehm*, District Attorney, and *John M. Groff*, contra.

LANDIS, P. J., March 25, 1922.—On Jan. 17, 1922, an indictment was returned by the grand jury against the defendants, charging that on Dec. 20, 1921, they "did forcibly abduct and steal away one James Ellwein, then in the legal custody of one W. A. Fetrow, and sent him, the said James Ellwein, into another country and state." The chief contention on the part of the defendant is that the indictment is defective on its face and should be quashed.

"Kidnapping," under the common law, was "the forcible abduction or stealing away of a man, woman or child from their own country and sending them into another." It "was capital by the Jewish law: 'He that stealeth a man and selleth him, or if he be found in his hand, he shall surely be put to death.' So likewise in the civil law, the offence of spiriting away and stealing men and children, which was called plagium and the offenders plagiarii, was punished with death:" 4 Blackstone's Commentaries, 219.

"The common law definition of the offence has been modified by statute in many states so as to include forcible seizing and confining another, or by inveiglement and enticement causing him to be sent out of the state, forcibly or fraudulently carrying away or decoying another from his place of resi-

dence, enticing away or detaining another for the purpose of ransom:" 24 Cyc., 797; and the crime itself, with its punishment, has also become statutory in most jurisdictions.

By the Statute of 9 George IV, ch. 31, § 21, it was provided that "if any person shall maliciously, either by force or fraud, lead or take away or decoy or entice away or detain any child under the age of ten years, with intent to deprive the parent or parents, or any other person having the lawful care or charge of such child, of the possession of such child, or with intent to steal any article upon or about the person of such child, to whomsoever such article may belong, or if any person shall, with any such intent as aforesaid, receive or harbour any such child, knowing the same to have been by force or fraud led, taken, decoyed, enticed away or detained, as hereinbefore mentioned, every such offender and every person counseling, aiding or abetting such offender shall be guilty of felony." Our Act of March 31, 1860, § 94, P. L. 382, follows the English statute. It is framed in almost the exact words of it.

In Mifflin *v.* The Com., 5 W. & S. 461, it was held that "a confederacy to assist a female infant to escape from her father's control, with a view to marry her against his will, is indictable as a conspiracy at the common law;" and in Com. *v.* Neuhauser and Richmond, 36 Lanc. Law Rev. 135, this court held that a "conspiracy to kidnap is an indictable offence under the common law." If, then, the indictment charged a conspiracy to kidnap or spirit this child out of the state, it would, I think, be sustainable; but that proposition is not before us. It does not charge conspiracy to kidnap, but that the defendants "did forcibly abduct and steal away one James Ellwein."

Is, then, the offence which it is claimed the defendants committed properly set forth? In Burns *v.* Com., 129 Pa. 138, it was held that "the offence provided against by section 94, Act of March 31, 1860, P. L. 382, is that known and punished by the common law as kidnapping, and it extends not only to cases where the intention is to detain the child kidnapped, but to steal any article of apparel or ornament about the person of the child."

In Com. *v.* Myers, 146 Pa. 24, it was said that "an indictment will not lie, under said section, against a father who peaceably obtains possession of his own child, or against others assisting him at his request. . . . Nor will such assistance of other persons constitute an indictable conpiracy, when no unlawful means are agreed upon or used." All of these propositions, however, do not support the objection that the indictment cannot be sustained, because, while it is said that the mother was implicated in the carrying away of the child, no such fact appears on the face of the indictment. The defendants had no relation, so far as we now know, with the child, and were not authorized to take him away from the party in whose charge he had been legally placed.

But the difficulty, as it appears to me, is that the indictment is insufficient in form. In Com. *v.* Myers, 146 Pa. 24, it was also decided that "an indictment for a conspiracy to abduct a child," under this section, "not averring the name or sex of the child and that it was under the age of ten years, and an intent to deprive its parent, or other person having lawful charge of it, of its possession, or to steal any article of apparel, etc., upon it, is defective." These requisites do not appear in the present indictment, and, in my judgment, under this decision of the Supreme Court, they ought to so appear in order to sustain it.

We do not think that any other objection need at this time to be considered. The motion to quash is sustained and the indictment is set aside.

From George Ross Eshleman, Lancaster, Pa.