ROGERS, J.
 

 I-Iosea Elliott, Herlis Elliott, and Yerlia Elliott were indicted for the offense of kidnapping (Rev. St. § S06, as amended by Act No. 299 of 1914). The^defendants were tried jointly and convicted of the offense charged. They filed a motion for a new trial, which was granted as to the defendants Herlis Elliott and Yerlia Elliott, but was refused as to the defendant I-Iosea Elliott, who was sentenced to serve sixty days in the penitentiary. This appeal is by Hosca Elliott from his conviction and sentence.
 

 The specific charge laid against the defendants was that they kidnapped Rubie Elliott, a female child four years of age, the child being at the time, of the alleged kidnapping in the custody of her mother, Mrs. Lucia Elliott.
 

 I-Iosea Elliott and Herlis Elliott are the brothers and Verlia Elliott is the sister of Sylvester Elliott, the father of the child, Rubie Elliott.
 

 Appellant contends that his conviction should be annulled, because the kidnapping statute does not apply to him, as he was-merely acting as the agent of the father of the child. 1-Ie saved the point by excepting to the refusal of the judge to give certain special charges to the jury, and to the overruling of-his motion for a new trial.
 

 
 *309
 
 As disclosed by the record, appellant is the brother of Sylvester Elliott, the father of the child, Rabie Elliott, issue of the marriage of Sylvester Elliott and Lucia Fontenot Elliott. Appellant sets up that at the time of the commission of the act with which he is charged no separation or divorce proceeding had been filed by, and no order of court had been rendered awarding the custody of the child to, either spouse. That Sylvester Elliott, his wife, and his child lived together near the home of Dave Elliott, the child’s paternal grandfather. That within two or three days before the act for which he was indicted was committed, Mrs. Lucia Elliott left the matrimonial domicile for the home of her father, J. B. Fontenot, taking her child with her. That on the day prior to the appellant’s act, Sylvester Elliott went to the home of his wife’s father for the purpose of seeing the child. That on returning home that night he requested and authorized appellant and the two other defendants to obtain the child for him. That the next morning, about 10:30 o’clock, Sylvester Elliott renewed his request and authorization, and, in accordance therewith, appellant and the two other defendants went to the home of J. B. Fontenot to secure the child. That they engaged Mrs. Lucia Elliott in conversation, and while thus engaged Miss Verlia Elliott took the child in her arms and handed her to appellant who carried her away with him. That Mrs. Lucia Elliott protested against the taking of the child and followed Herlis Elliott and Miss Verlia Elliott to their automobile, which was parked in front of the home of J. B. Fontenot. That, after some conversation with Mrs. Lucia Elliott and her mother, Mrs. J. B. Fontenot, Herlis Elliott and Miss Verlia Elliott promised to return the child the same night. That Herlis Elliott and Verlia Elliott then drove Away in the automobile, and were joined some. distance down the road by appellant, who had possession of the child. That the child was delivered to her father, Sylvester Elliott, who took her to his father’s house, where she was found by a deputy sheriff. That the same night the child was returned to her mother, Mrs. Lucia Elliott, by the deputy sheriff, who was accompanied by Miss Verlia Elliott. It further appears from the record that at the time appellant obtained possession of the child he was armed with a pistol which he drew, and brandished in the air.
 

 The trial judge refused to give the special charges requested, which were five in number, on the ground that a part of them were' included in the original charge, and the others were misleading and tended to confuse the jury; that the law provides the manner and method of taking children from the care and custody of their parents, which could .not be done by force and at the point of a pistol ; hence the passage of Act No. 299 of 1914.
 

 The trial judge was correct, of course, in refusing, to give so much of the requested charges as were included in the general charge and as might tend to confuse the jury, but we think he erred in refusing to give the charges so far as they were calculated to advise the jurors that, if they found that no suit for divorce or separation had been filed between the spouses, and there was no order of court awarding the custody of the child to her mother, and that the defendants in taking the child were acting merely as the agents of and for account of her father, they were not guilty of kidnapping under the statute.
 

 When parents quarrel and separate each naturally desires and claims possession of their children. The statute has no application to such cases. Its purpose is to protect parents and other lawful custodians of chil
 
 *311
 
 dren against the malice or greed of the kidnapper, not to punish their natural guardian for attempting to enforce extrajudieially his or her claim to their possession and control.
 

 A child remains under the authority of his father and mother until his majority or emancipation. In case of difference between the parents, the authority of the father prevails. Oiv. Code, art. 216. But in suits for separation or divorce, the provisional custody of the children is in their mother. Act No. 124 of 1888. This statute indicates that in the matter of the custody of children pending* disagreements between their parents, and in the absence of a final judgment of separation or divorce, the law favors the wife.
 

 However, neither spouse has an absolute right to the custody of their children. The house of the father is the proper residence of the family, which it is his duty to maintain. His authority over his children is superior to that of their mother- so long as they may reside together as husband and wife. If the wife be compelled to leave the matrimonial domicile on account of ill treatment, the court will aid her solicitude and deprive the father of a power which he is likely to abuse. State ex rel. Lasserre v. Michel, 105 La. 741, 30 So. 122, 54 L. R. A. 927.
 

 Where a father is entitled to the possession of his minor child as against all the world except its mother, and where the father and mother are equally entitled to its possession, he does not commit the crime of kidnapping by taking possession of it. State v. Dewey, 155 Iowa, 469, 136 N. W. 533, 40 L. R. A. (N. S.) 478; Commonwealth v. Myers, 146 Pa. 24, 23 A. 164; Hunt v. Hunt, 94 Ga. 257, 21 S. E. 515; People v. Congdon, 77 Mich. 351, 43 N. W. 986. Nor is a person who assists the father under such circumstances guilty of the crime. Commonwealth v. Myers, 146 Pa. 24, 23 A. 164; State v. Beslin, 19 Idaho, 185, 112 P. 1053, 1055; John v. State, 6 Wyo. 203, 44 P. 51; State v. Angel, 42 Kan. 216, 21 P. 1075. And it is immaterial how reprehensible their actions may be. John v. State, 6 Wyo. 203, 44 P. 51; State v. Beslin, 19 Idaho, 185, 112 P. 1053, 1055. From these legal principles, it clearly follows, in our opinion, that an agent taking a child from the custody of one parent, who is without an absolute right to its possession, and delivering it to the custody of the other parent, under the authority of whom he was acting, whatever other offense he may commit in accomplishing his purpose, cannot be any more guilty of kidnapping than his principal would be if he performed the act himself.
 

 The appellee relies upon State v. Brandenburg, 232 Mo. 531, 134 S. W. 529, 32 L. R. A. (N. S.) 845, to uphold appellant's conviction under the statute. It is true, the Supreme Court of Missouri announced in that case the rather broad rule that the right of one parent to invade the possession of the other parent in order to take away or decoy their mutual offspring, if such a right exists, cannot be delegated to an agent. But the court found that the father was not only in the lawful charge, but also in the legal custody, of his child. The accused, who apparently at one time had been either in jail or a fugitive from justice, was the alleged stepfather of the child. Although he claimed that he was acting as the agent of the child’s mother, there was no evidence showing that the mother had made any prior demand for the possession of her child. And, as a matter of fact, the accused did not take the child to its mother, but instead of doing so took it to California, where he was arrested and brought back to St. Louis for trial. These facts, we think, differentiate the cited case from appellant’s case. But, be that as it may, we are
 
 *313
 
 not willing to approve a rule which is so broad in its scope as to punish an agent for doing an act which his principal might do without violating any of the penal laws.
 

 For the reasons assigned, the 'conviction and sentence appealed from are annulled, and the case is remanded to the district court for a new trial.