THE STATE v. WELTON G. HUHN, Appellant.—142 S. W. (2d) 1064.

Court en Banc, September 3, 1940.

*Robert G. Mayfield, Phil M. Donnelly, J. Andy Zenge, Jr.,* and *John Moberly* for appellant.

*Roy McKittrick*, Attorney General, and *J. F. Allebach*, Assistant Attorney General for respondent.

DOUGLAS, J.—Appellant was convicted of the felony of enticing away a child. The offense arises under Sec. 4022, R. S. 1929, Ann. Stat., p. 2828, which provides punishment upon conviction for any person who shall maliciously, forcibly or fraudulently lead, take or carry away or decoy or entice away any child under the age of twelve years, with the intent to detain or conceal such child from its parent, guardian or other person having the lawful charge of such child. He was fined $500, the minimum punishment.

The important facts of this case are undisputed. Appellant is the father and the prosecuting witness is the mother of the child which appellant took from the mother. Appellant and the prosecuting witness, Jayma Brown Huhn, were married on January 25, 1936 at Lebanon, Mo. She was attending school at the time and remained

at her home for two months after the marriage while the appellant was at work in the oil fields in Kansas. She then joined him there and lived with him until after she became pregnant when she returned to her home where their child was born in March, 1937. She thereafter remained in Missouri. All the while she was away from her husband he pleaded with her to return to him both by letter and by personal supplication when, from time to time, he would return to Missouri to see her. They remained on friendly terms but it is apparent that he suffered the enmity of her parents. He testified that on one of his visits he discussed with the prosecuting attorney about obtaining custody of his child as a means of bringing his wife back to him. He also talked to the sheriff about it and both advised him that he had a right to the custody of his child.

The evidence in support of the offense charged shows that on October 2, 1937, the appellant and his brother went to the home of his wife's parents where the child had been left with his wife's sister and brother-in-law. He had some conversation with the latter and over their objection, he took his child and carried it to Kansas where he was working. He testified that his purpose in taking the child was to cause his wife to return to him despite her parents' objection.

The facts are undisputed that appellant's wife did not know he was going to take their child and at no time gave her consent or approval to appellant's doing so; that appellant and his wife were not divorced nor was any proceeding for a divorce pending; and that there had been no decree of any court pertaining to the custody of the child. There was no evidence of any pending action to adjudicate the question of its custody.

In order to sustain the conviction the State relies on Sec. 1362, R. S. 1929, Ann. Stat., p. 1579, and insists that by the terms of this section the custody of the child was thereby vested exclusively in the appellant's wife so as to make the criminal statute applicable. The section follows. The part on which reliance is especially based is in italics.

"The father and mother living apart are entitled to an adjudication of the circuit court as to their powers, rights and duties in respect to the custody and control and the services and earnings and management of the property of their unmarried minor children without any preference as between the said father and mother, and neither the father nor the mother has any right paramount to that of the other in respect to the custody and control or the services and earnings or of the management of the property of their said unmarried minor children, *pending such adjudication the father or mother who actually has the custody and control of said unmarried minor children shall have the sole right to the custody and control and to the services and earnings and to the management of the property of said unmarried minor children.*" [Sec. 1362, R. S. 1929, Ann. Stat., p. 1579.]

Unless this section supports the construction so placed upon it the conviction cannot stand. We must therefore first determine its meaning and application.

By the common law the duty being on the father to support and maintain his minor child as its natural guardian he had the correlative right to its custody. This right of custody in the father was paramount and superior even to the right of the mother. The common law would not allow the father irrevocably to divest himself of the custody of his child even by contract with the mother. [In re Scarritt, 76 Mo. 565.]

In so placing the custody of a child in its father the law presumed that such custody, being in harmony with nature was best for the interest not only of the parent and child, but also of society. Later, by the statutes for the adoption and apprenticing of children this presumption could be overcome in the interest of the children's welfare and the right of custody was permitted to be transferred to another. [Weir v. Marley, 99 Mo. 484, 12 S. W. 798.]

By decision and statute the father's paramount right to the custody of his child was forfeited if he was unfit or incompetent to take charge of it or if the welfare of the child itself demanded a different disposition of its custody at the hands of the court. [State ex rel. Crockett v. Ellison, 271 Mo. 416, 196 S. W. 1140.]

In 1913 the General Assembly passed an act entitled: "An Act to give married women equal rights with their husbands to the custody and control of the persons of their minor children . . ." [Laws 1913, p. 91.] In every respect the act carried out the purpose expressed in the title. It first amended the statute pertaining to natural guardians of minors so as to give the mother equal rights with the father. It empowered a married woman to be the curator of the estate and the guardian of the person of any minor. It gave her the right to apprentice her children. It then added a new section which is now Sec. 1362, the section under consideration.

This section expressly states that neither of the parents has any right paramount to that of the other in respect of the custody of their minor children. If the parents are living apart then they are entitled "to an adjudication of the circuit court" for the custody of their children without any preference between them. Pending such adjudication the parent who actually has the custody of a child shall have it exclusively. The State argues this last sentence means that the parent, having the custody at the time of or after a separation, continues to have the sole custody until such time as a circuit court may adjudicate the matter. It contends that the word pending is used as a preposition and means *until* or *while awaiting* an adjudication.

We do not agree with this thesis. If such be the case the parent having the custody of a child at the time of separation could retain it to the exclusion of the other parent even though no proceeding to

adjudicate such custody was ever commenced. The use of the words "such adjudication" clearly implies that there shall be a proceeding in the circuit court to bring about an adjudication, an exercise of judicial power. It contemplates a contest for the custody. [See State ex rel. Canfield v. Porterfield (Mo. App.), 292 S. W. 85, and Copeland v. Davis (Mo. App.), 253 S. W. 427.] This position is sustained by the first sentence of the section which gives the parents the right "to an adjudication of the circuit court." An adjudication involves the exercise of judicial power through a hearing upon an issue, the receiving and weighing of evidence and the act of rendering a judgment. [People v. Sohmer, 207 N. Y. 450, 101 N. E. 164.] Therefore "pending such adjudication" as used in this section must mean from the time a proceeding is commenced for an adjudication until such adjudication is rendered.

We have said that a suit is "pending" from the time it is instituted until it is finally disposed of. [Ex parte Munford, 57 Mo. 603.] Section 1355, R. S. 1929, Ann. Stat., p. 1564, authorizes the court to "decree alimony pending the suit for divorce." It will be observed that "pending" is similarly used. Should we apply to this section the reasoning advanced by the State it would authorize the granting of alimony before a suit for divorce was filed, which would be an absurd construction of the section.

We conclude that until the time a proceeding is instituted whereby custody may be adjudicated neither of the parents, although they are separated has exclusive custody of their children. Applying this conclusion to the admitted facts of this case we find that appellant had a right to the custody of their child equal to that of his wife.

Although we have no decision on the point involved in this State, the rule is established throughout the United States that where the father and mother are equally entitled to the custody of their minor child the father does not commit the crime of kidnapping by taking exclusive possession of it. [State v. Elliott, 171 La. 306, 131 So. 28; Hard v. Splain, 45 App. D. C. 1; Commonwealth v. Myers, 146 Pa. 24, 23 Atl. 164; Hunt v. Hunt, 94 Ga. 257, 21 S. E. 515; State v. Angel, 42 Kan. 216, 21 Pac. 1075; State v. Powe, 107 Miss. 770, 66 So. 207.] Where the custody has been established by the decree of a competent court or by statute the rule is otherwise. [See Annotations in 32 L. R. A. (N. S.) 845, and 77 A. L. R. 315.]

The case of Burns v. Commonwealth, 129 Pa. 138, 18 Atl. 756, rules similar facts under a similar kidnapping statute. That case decided that such a statute was enacted to protect parental and other lawful custody of children against the kidnapper, not to punish the natural guardian for exercising his right to the possession and control of them. We apply the same ruling to the statute under which appellant was convicted.

The judgment is reversed and appellant is discharged. *Tipton,*

*Clark, Hays* and *Gantt, JJ.,* concur; *Leedy, C. J.,* dissents in separate opinion; *Ellison, J.,* dissents and concurs in dissenting opinion of *Leedy, C. J.*

LEEDY, C. J. (dissenting).—I dissent. The outright reversal of defendant's conviction is based upon a construction of Sec. 1362, R. S. '29 (Sec. 1362, Mo. Stat. Ann., p. 1579), in which I am unable to concur. The statute reads as follows:

"The father and mother living apart are entitled to an adjudication of the circuit court as to their powers, rights and duties in respect to the custody and control and the services and earnings and management of the property of their unmarried minor children without any preference as between the said father and mother, and neither the father nor the mother has any right paramount to that of the other in respect to the custody and control or the services and earnings or of the management of the property of their said unmarried minor children, *pending such adjudication the father or mother who actually has the custody and control of said unmarried minor children shall have the sole right to the custody and control and to the services and earnings and to the management of the property of said unmarried minor children.*" [Italics mine.]

The State, as parens patriae, is authorized to legislate for the protection, care, custody, and maintenance of children within its jurisdiction. [27 Am. Jur., Infants, sec. 102, p. 823.] That the italicized portion of the section, supra, was enacted for the benefit and protection of children of broken homes, I entertain no doubt. The lawmakers knew of the confusion, uncertainty and disorder often attending the status of such children, and the resulting violence and breaches of the peace where, as here, one parent undertakes to enforce, extrajudicially, as against the other, what he or she conceives to be his or her rights in respect to the custody of their children. I think it was the intention to make provision for a more orderly state of affairs in such instances. This the Legislature did by providing that the father and mother living apart might have an adjudication of the circuit court not only with respect to the custody and control of their unmarried minor children, but also as to "the services and earnings and management of the property" of such children. The act then provides that "pending such adjudication the father or mother who actually has the custody and control of said unmarried minor children shall have the sole right to the custody and control and to the services and earnings and to the management of the property of said unmarried minor children." The principal opinion construes the words "pending such adjudication" to mean "from the time a proceeding is commenced for an adjudication until such adjudication is rendered." In other words, it interpolates and reads into the statute the words "during the pendency of an action or proceeding for" (such adjudication). To

me this seems unwarranted. I think it is evident that the words were used in the sense of "while awaiting" or "until" an adjudication. This would effectively carry out the legislative plan in practical operation, and results as well from a consideration of the meaning of the language used as defined judicially and by the lexicographers. Webster's International Dictionary defines the word "pending" both as a preposition and as an adjective. The definitions are, respectively, as follows:

(Prep.) "a. During; through the period of continuance or indeterminancy of; as, *pending* the trial, suit, debate. b. Until; from the present time until the happening of, or the conclusion or completion of; as, *pending* the decision or negotiations.

"Syn.-Pending, During. Pending, as here compared, was in older usage synonymous with *During*; as *During* the trial, *pending* the trial. In modern usage, it more frequently has the sense of *while awaiting* (an occurrence), *until the conclusion of* (an action); as, *pending* his return, *pending* the decision, *pending* the negotiations." (Adj.) "Hanging, overhanging; hence imminent or impending, not yet decided; in continuance; in suspense, as, a pending suit."

In Bagnall v. Travelers Ins. Co., 296 Pac. 106, 111 Cal. App. 714, the court was called upon to construe the phrase "pending due proof of a claim." It was there said, "In modern usage, the word 'pending' more frequently has the sense of 'while awaiting' . . ." [Citing Webster's New International Dictionary.] And in holding such to be its meaning, the court said it did so without resort to a liberal construction, but by giving the word its ordinary meaning.

In Cincinnati, H. & D. Ry. Co. v. McCullom, 109 N. E. 206, 183 Ind. 556, Ann. Cas. 1917E, 1165, the Supreme Court of Indiana construed the meaning of the words "pending such appeal" appearing in a statute providing for the survival of certain causes of action. The holding is stated in the syllabus as follows:

"Burns' Ann. Stat. 1914, sec. 286, providing that, whoever has a claim for personal injuries obtains a judgment, and who dies pending the appeal or before a new trial after reversal, his claim may be prosecuted by his personal representatives, must be construed to mean that the action survives to the personal representative of a judgment plaintiff, dying while awaiting an appeal or during the continuance of the appeal, for the words 'pending such appeal' must mean *during the time before appeal, and while an appeal is impending,* and the word 'pending' means *during the time intervening before, awaiting, until,* . . ." [Italics mine.]

In Riggins v. Thompson, 71 S. W. 14, 96 Tex. 154, the Supreme Court of Texas held that where a district clerk was directed by the judge to cite defendants to appear on a named day to show cause why a permanent injunction should not be granted, and to issue a "restraining order to defendants . . . *pending such hearing,*" it was

held to mean the same as if the words had been *"until* and pending such hearing," and "the intention was to limit the operation of the order *until* such time as the parties could be heard upon the issue . . ." [Italics mine.].

The principal opinion makes the point that the word "pending" as used in Sec. 1355, R. S. '29. (Sec. 1355, Mo. Stat. Ann., p. 1564) authorizing the court to "decree alimony pending the suit for divorce" is used in the same sense as in the statute here under scrutiny, and concludes that the construction contended for by the State "would authorize the granting of alimony before a suit for divorce was filed, which would be an absurd construction of the section." There is no similarity between the two sections, because it will be observed that the alimony section authorizes the granting of "alimony pending the suit for divorce in all *cases* where the same would be just, *whether the wife be plaintiff or defendant* . . ." [Italics mine.]

I do not think that failure, refusal or neglect on the part of either the father or mother, or both, when living apart, to invoke the jurisdiction of the circuit court for the purpose of the adjudication provided by statute, operates to suspend the provision giving exclusive right to the custody and control to the parent who actually has such custody and control. If this is not true, and under the holding of the principal opinion, it must follow that Mrs. Huhn has a perfect right to regain custody of her child by the same reprehensible means that led to defendant's conviction. Then he, in turn, would be authorized to retake the child, and this process could be repeated again and again, I suppose, until the child reaches its majority. I do not think the statute sanctions any such conduct, but on the contrary was directed at this very evil. It should be construed accordingly. *Ellison, J.,* concurs.