STATE of Missouri, Respondent,

v.

Richard VITIELLO, Appellant.

No. WD 41115.

Missouri Court of Appeals,
Western District.

May 15, 1990.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 3, 1990.

Application to Transfer Denied
July 31, 1990.

Donald L. Catlett, Asst. Public Defender, Columbia, for appellant.

William L. Webster, Atty. Gen., Frank A. Jung, Asst. Atty. Gen., Jefferson City, for respondent.

Before NUGENT, C.J., FENNER, J., and WASSERSTROM, Senior Judge.

FENNER, Judge.

In this consolidated appeal, appellant Richard Vitiello appeals from his convictions, following a jury trial, of first degree burglary and kidnapping and appeals the denial, after an evidentiary hearing, of his motion for post-conviction relief pursuant to Rule 29.15.

The evidence adduced at trial, viewed in the light most favorable to the verdict is as follows:

Vitiello and Wendy Sargent lived together for about one and one-half years. They were never married. During this time a daughter, Jennifer, was born to Sargent and Vitiello. Around August, 1987, the

relationship ended and Jennifer remained with Sargent.

On March 26, 1988, sometime in the early morning hours between 2:00 and 2:30 a.m., Sargent was awakened by her sister, Rhonda Scott, who was staying with Sargent for the weekend. Scott told Sargent that someone was peeking in the back window. Also present were Scott's two friends, Rob Smith and Michelle Kribbs. Sargent went to investigate and saw Vitiello looking through the front door windows. Vitiello wanted to come in to see Jennifer and to speak to Sargent, but Sargent refused, telling him it was late and that she had to go to work the next morning. When Vitiello refused to leave, Sargent told Robert Smith to go out the back door and to call the police.

In the meantime, Sargent talked with Vitiello through the front door, trying to get him to leave. The police arrived and an officer talked to Vitiello, then both Vitiello and the officer drove away.

Vitiello soon returned after the police left and again tried to enter the residence. Sargent, Scott, Smith and Kribbs were standing in the living room and heard a loud noise at the back door. Vitiello gained forcible entry through the back door near the laundry room and entered the living room. He told Sargent he wanted to talk to her alone and to see the baby. If she refused, Vitiello told Sargent he would take Jennifer and leave.

Sargent eventually agreed to talk to Vitiello alone and the two talked in the kitchen. Vitiello told Sargent that he wanted a reconciliation and tried to get her to sign an agreement regarding Jennifer. He also told Sargent that if anyone tried to leave to call the police, he would take Jennifer and Sargent would never see her again. Vitiello next told Sargent that he would leave and never bother her again if she would let him hold Jennifer.

Scott went upstairs and brought Jennifer down and Vitiello was allowed to hold Jennifer for a short time. Scott then took the child back from Vitiello and Sargent proceeded to the front door, opened it and asked Vitiello to leave. Vitiello wanted to hold Jennifer again and tried to get Sargent to sign a custody agreement. As they were all standing at the front door, Vitiello grabbed Jennifer from Sargent and carried her out the front door to his car. He put the child in the front seat, got in himself and drove away.

Sargent contacted the police and later that day received a call from Vitiello telling her that he was at his mother's home in Wright City. Vitiello told Sargent to come to his mother's home if she wanted to see Jennifer and also that she would not get Jennifer back unless she agreed to marry him.

Vitiello called the Sheriff's Department and asked a Deputy Jenkins if there was a warrant for his arrest. He told Jenkins that Jennifer would never be seen again if the police became involved.

Vitiello next contacted a Detective Anderson and told him that he had the baby and if Sargent would meet with him she could have the baby back. He told Anderson that so long as the police were not involved there would be no problems. Pursuant to Anderson's directions, Sargent called Vitiello's mother and asked if she would find her daughter. Vitiello's mother told Sargent she did not know where Vitiello was, but would try to find him if Sargent would call back from a pay phone.

Arrangements were made by Anderson to set up a trace on a pay phone in the Boone County Courthouse. Sargent called Vitiello's mother from that telephone at about 12:12 a.m., on March 27 and left the number to the pay phone. A short time later Vitiello called Sargent and let her speak with Jennifer. Sargent was on the line until 2:20 a.m. The call was traced to a number in Wright City and Vitiello was later arrested at the address given police by the telephone company.

Vitiello was returned to Boone County where he was tried by a jury and found guilty of first degree burglary and kidnapping. He was sentenced as a prior offender to concurrent terms of five and seven years' imprisonment. Notice of appeal was timely filed with this court.

Subsequently, Vitiello filed a pro se motion pursuant to Rule 29.15. Following an evidentiary hearing the Rule 29.15 motion was denied.

Vitiello presents three points on appeal, the first of which alleges that the trial court erred in denying his motion for judgment of acquittal on the burglary charge because the evidence was insufficient to establish that he remained in Sargent's residence unlawfully with the purpose of committing the crime of kidnapping.

■ The crime of burglary in the first degree is committed if a person knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing a crime therein and during that time, there is another person present in the structure who is not a participant in the crime. § 569.160, RSMo 1986. The intent of a person entering another's premises without permission is rarely shown by direct evidence and is usually inferred from the circumstances. *State v. Shipman*, 737 S.W.2d 267, 268 (Mo.App.1987).

A review of the previously related facts indicates, contrary to Vitiello's assertion, that the evidence was sufficient to support the burglary conviction. Most notably, Vitiello, on at least two occasions, threatened to take Jennifer and leave, once stating that Sargent would never see her again. Specifically, these statements, as well as Vitiello's erratic and demanding behavior upon unlawfully entering the premises, were not consistent with someone who remained on the premises for a lawful purpose. Point I is denied.

■ In Point II Vitiello argues that it was error for the trial court to overrule his motion for judgment of acquittal on the charge of kidnapping because the evidence was insufficient to prove that he unlawfully removed Jennifer from the residence or that he did so with the purpose of terrorizing Sargent.

A person commits the crime of kidnapping if he unlawfully removes another without his consent from the place where he is found for the purpose of terrorizing the victim or another.

There is no dispute that Vitiello is the father of Jennifer. Apparently, Vitiello wants this court to buy into his argument that because there was no evidence that Sargent had been granted sole legal custody, his taking of her was permissible behavior because he had as much right to the child as did Sargent.

Pursuant to § 211.021(4), RSMo 1986, legal custody is inherently that of the "parent" unless taken away by legal process. "Parent" is defined as:

"... either a natural parent or a parent by adoption *and if the child is illegitimate, parent means the mother* (emphasis added)." § 211.021(5), RSMo 1986.

Jennifer is the illegitimate child of Vitiello and Sargent and thus, in accordance with the statute Sargent is the parent. In opposition to Vitiello's assertion, it is evident that his parental rights were not equal to Sargent's.

■ Vitiello also argues that there was insufficient evidence that he removed Jennifer with the purpose of terrorizing Sargent. He alleges that his intent was to convince Sargent to marry him and he impulsively took the child as an act of frustration.

Vitiello's argument in this regard is, at best, unconvincing. It may be true that Vitiello was attempting to convince Sargent to marry him, but when his efforts failed he attempted to terrorize her into marrying him by removing the child.

The evidence supports a finding that Vitiello removed Jennifer without Sargent's consent for the purpose of terrorizing her. Point II is denied.

■ In his third and final point Vitiello takes issue with the denial by the motion court of his motion for post-conviction relief, following an evidentiary hearing, pursuant to Rule 29.15. In the motion, Vitiello alleged that his trial counsel was ineffective for failing to investigate and call witnesses who could have testified that he had lived with Sargent at the residence where

the offenses occurred. Vitiello argues that this testimony could have supported his defense that he did not commit a crime by entering the residence.

To establish an ineffective assistance of counsel claim an appellant shoulders the heavy burden of proving that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Under Rule 29.15(g), review by this court is limited to determining whether the findings, conclusions and judgment of the hearing court are clearly erroneous.

At the evidentiary hearing Vitiello testified that he informed counsel at 9:30 p.m. on the evening before trial of witnesses he wanted brought in to testify. Vitiello also testified that he "believed" he gave counsel the names of Judy Gillian, Donna Sorrels and Karen Hughes.

Counsel indicated that Vitiello had mentioned the names of other persons he wanted to call, but these individuals were to be used only to attack Sargent's credibility. Counsel also testified that he believed that if these persons would have testified Vitiello's character would have been brought out, such as the details of Vitiello's stormy relationship with Sargent.

It is evident, as found by the motion court, that trial counsel chose not to present these witnesses fearing that damaging evidence regarding Vitiello would surface. The motion court found that counsel used trial strategy in not calling the witnesses. The motion court also found as does this court that under *Porter v. State,* 682 S.W.2d 16, 18 (Mo.App.1984), counsel could not be held ineffective in that the selection of witnesses is a matter of trial strategy.

The judgments of the trial and motion courts are, in all respects, hereby affirmed.

All concur.