STATE of Missouri, Respondent,

v.

Daniel W. PORTER, Appellant.

No. WD 66921.

Missouri Court of Appeals,
Western District.

Dec. 18, 2007.

Ruth Sanders, Kansas City, MO, for Appellant.

Shaun J. Mackelprang, Jefferson City, MO, for Respondent.

Before LAURA DENVIR STITH, Sp.J., P.J., JAMES M. SMART, JR., and THOMAS H. NEWTON, JJ.

JAMES M. SMART, JR., Judge.

Daniel Porter was convicted after a jury trial of two counts of kidnapping his own children to terrorize their mother in violation of section 565.110.[1] He was also convicted of two counts of parental kidnapping in violation of section 565.153 for refusing to return the children after the weekend visitation. On appeal, Porter contends, *inter alia*, that he could not be convicted of the "unlawful removal" of his own children under section 565.110. The basis of Porter's argument is that, as a parent with custody rights, he was privileged by law to control the movement of the children. He also seeks a new trial as to the remaining charges on the basis of alleged trial court error. For the reasons set forth herein, we reverse in part, and affirm in part.

## Background

The basic facts of the case were not disputed at trial. Daniel and Tina Porter married in 1991. Two children were born of the marriage, Lindsey and Samuel. In September of 2003, the couple separated. Tina Porter and the Porters' young children lived with Tina's sister. Daniel Porter (hereafter "Porter") visited the children frequently. The separation continued for several months, until December of 2003, when Tina and the children moved back home.

In mid-January 2004, Tina separated from Porter again. Because of erratic, threatening actions by Porter, who was emotionally distraught, Tina obtained an *ex parte* order of protection, limiting Porter's contact with her. The order also specified limitations on Porter's contact with the children and required that another person supervise his time with the children. Despite the terms of the order, however, Tina did not require that the visits be supervised because of her belief that Porter would not hurt the children.

Porter filed a petition for divorce shortly after the second separation. Porter agreed to move out of the house and to allow Tina and the children to live in the house. The order of protection against Porter expired February 18, 2004. Tina obtained a second order of protection in May of 2004, limiting Porter's contact with Tina. This order did not restrict Porter's visits with the children. Tina agreed to allow visitation to Porter in accordance with the schedule and terms of the first order.

On the morning of Saturday, June 5, 2004, about nine months after the original separation, Porter arrived to take the children for the weekend. The agreed schedule called for Porter to have the children until 6:00 p.m. Sunday, June 6. After saying he was going into the house to retrieve fireworks, Porter retrieved a rifle and a shotgun he had earlier hidden above the ceiling tiles in the basement. He stated that these were the guns he would use to shoot himself. Tina insisted that he leave

---

1. Unless otherwise indicated, all statutory references are to the Revised Statutes of Missouri 2000.

the guns at the house. Porter did leave the guns. He took the children.

Later that morning, Porter contacted Tina and stated that he had bought some furniture at an estate sale and needed to trade vehicles with her so he could use the pickup truck. Tina went to meet Porter on Cement City Road, a few miles from her house. Lindsey and Samuel were not with him. He said he left them at the estate sale. She said she would drive him to get the furniture. As they were driving along Cement City Road, Porter asked Tina to put the truck in 4–wheel drive and pull onto a narrow path into the woods. He said he had stashed a bag of $50,000 cash at that spot and he wanted to retrieve it. Porter wanted her to go up in the woods with him to get this cash. Tina refused to stop. She suggested that Porter take the truck himself. She said she would take his car. They returned to Porter's car. Tina noticed that the children's suitcase was in the back of the car. Tina told Porter that he was forgetting the children's suitcase. He took it from her.

Later that day, Tina received a message from Porter, stating he was taking the children to Worlds of Fun amusement park. Tina attempted to call Porter back because she was worried that the children did not have proper clothes for a trip to Worlds of Fun. Porter did not respond to her calls. Porter contacted Tina again around 9:00 that evening. He told her they were staying at a motel near Worlds of Fun. Tina asked to talk to the children and Porter stated that they were upstairs and could not talk to her. She asked that he go upstairs and call her back so that she could talk to the children. Porter responded that he would bring the children home at 6:00 p.m. the next day.

The next morning, Porter text messaged Tina with a message that said, "Go to 210 and 291. Behind a pole there's a note. Be strong." Tina and her sister went and found a card. The card contained a message that seemed to be saying goodbye, with vague sentiments. Then the card stated: "After talking for two hours with—I'm sorry I can't give names. This family will take care of our kids."

Tina and her sister sought help from the police. Tina returned home and received a text message from Porter informing her that she had "one call before [he] die[d]." Tina called him and asked him where the children were. Porter did not answer the question.

A few days later, on June 10, 2004, the police arrested Porter near Trenton, Missouri. The children were not with him and had not been found. In police interviews, Porter told the officers various and divergent stories about what he had done with the children, including, among other statements, that he had "sold them," and that he had "killed them" and thrown them "in the river." In a telephone conversation with Tina, Porter said, "the only way I can hurt you is to keep the children from you." He also said that she would never see the children again.

Porter was charged with two counts of "traditional" kidnapping in violation of section 565.110 (a class B felony as charged) and two counts of parental kidnapping in violation of section 565.153 (a class D felony). The kidnapping charges under section 565.110 specified that the crimes took place on June 5, 2004, when Porter is alleged to have "unlawfully removed" the children from their mother's residence "without consent" for the purpose of terrorizing Tina Porter. The parental kidnapping charges asserted that Porter violated section 565.153 on June 6, 2004, when Porter concealed the children instead of returning them.

The circuit court entered a dissolution decree on November 2, 2004, while the criminal charges were pending. The court awarded custody of the children, who were still missing, to Tina.

At the trial on the criminal charges, Porter did not testify. There was no attempt to refute the evidence that Porter had taken and concealed the children. Apart from a legal attack on the applicability of section 565.110, Porter's main defense strategy was to suggest that Porter's motive for hiding the children was not to terrorize Tina Porter, but was instead driven by his fear that Tina would remarry and the children would be subject to an abusive stepfather. This notion was presented through the testimony of Porter's half-brother, who testified that Porter himself had been severely abused as a child by his stepfather.

The jury found Porter guilty of both counts of kidnapping under 565.110 and both counts of parental kidnapping under 565.153. The court sentenced Porter to 15 years for each count of kidnapping and 4 years for each count of parental kidnapping, to run consecutively for a total of 38 years.[2]

### Grounds on Appeal

Although Porter appeals the convictions as to all counts, his appeal as to the two parental kidnapping convictions seeks a new trial on grounds of trial court error related to evidentiary matters. He does not claim he is entitled to outright reversal and acquittal on those charges. With regard to the traditional kidnapping charges under section 565.110, however, he contends that he is entitled to outright acquittal because the State failed to present evidence of his guilt of all statutory elements.

## I. The Challenge to the Traditional Kidnapping Conviction

### A. The Kidnapping Statutes

Before we turn to consideration of Point I, it may be helpful to provide an overview of the two kidnapping statutes under which the charges were brought in this case. The charges under 565.110 carried a maximum fifteen-year sentence for each count (as a class B felony). We can refer to section 565.110, for lack of a better term, as "traditional kidnapping" because it incorporates the elements we commonly and traditionally associate with kidnapping. The charges under 565.153, on the other hand, carried a maximum four-year sentence for each count (as a class D felony). We refer to section 565.153 by its statutory title: "parental kidnapping."

### 1. Parental Kidnapping Under 565.153

The two separate charges of "parental kidnapping" pursuant to section 565.153, each a class D felony, dealt with Porter's behavior in refusing to return the children on and after June 6, 2004. Section 565.153 is a statute adopted in 1988 to provide for a criminal penalty when a parent, without good cause, interferes with the custody rights of the other parent or of a state agency. A person commits the class D felony of parental kidnapping under 565.153 if he or she:

**[i]n the absence of a court order determining rights of custody ... removes, takes, detains, conceals, or entices away a child without good cause, and with the intent to deprive the**

---

2. After submission of this case and before hand down, news sources reported that the remains of two children found near Cement City Road were identified as those of Lindsey and Samuel Porter. At the time of the trial, however, it was unknown whether the children were alive or dead.

custody right of another person or a public agency also having a custody right of the child.

The charge against Porter under 565.153 specified that, instead of returning the children as agreed, he concealed them without good cause to deprive Tina Porter of her custody rights.

### 2. Traditional Kidnapping Under 565.110

The statute governing conduct that comes within the more traditional or lay meaning of "kidnapping" is section 565.110. That statute provides as follows:

**1. A person commits the crime of kidnapping if he or she *unlawfully removes another without his or her consent* from the place where he or she is found or unlawfully confines another without his or her consent for a substantial period, for the purpose of**

**(1) Holding that person for ransom ...; or**

. . . .

**(5) Inflicting physical injury on or terrorizing the victim or another.**

**2. Kidnapping is a class A felony unless committed under subdivision (4) or (5) of subsection 1 in which case it is a class B felony.** [Emphasis added.]

Under the language of this section, a person having one of the listed criminal purposes in mind can commit the crime of kidnapping by either (1) the unlawful, uncontested *removal* of another person, or (2) the unlawful, uncontested *confinement* of another person. The two methods of committing kidnapping are alternatives to one another. *State v. Belcher,* 805 S.W.2d 245, 250–51 (Mo.App. S.D.1991). If the State charges both unlawful removal and unlawful confinement, it is then required to elect either removal or confinement to submit to the factfinder. *See, e.g., State v.*

*White,* 431 S.W.2d 182, 185 (Mo.1968). In this case, as to traditional kidnapping, the State charged and submitted only the wrongful *removal* of the children. The removal was alleged to have occurred on or about June 5, 2004, when Porter picked up the children from their mother's residence.

### B. Point I—An Issue of Law

In his first point, Porter contends that the State did not show that his removal of Lindsey and Samuel Porter on June 5, 2004, was "unlawful" and "without his or her consent," as the State was required to show in order to convict him of traditional kidnapping under 565.110. The State contends, in response, that the evidence was sufficient because it showed (1) that Porter removed the children, (2) that the children were under fourteen years of age (and, thus, could not legally consent), and (3) that Porter's purpose was to terrorize Tina Porter.

To the extent that our review of Point I involves a determination of the meaning of the phrase "unlawfully removes another without his or her consent" in section 565.110, the issue is one of statutory interpretation. Statutory interpretation is an issue of law that the court reviews *de novo* as a matter of law. *Delta Air Lines v. Dir. of Revenue,* 908 S.W.2d 353, 355 (Mo. banc 1995); *State v. Beck,* 167 S.W.3d 767, 781 (Mo.App. W.D.2005). To the extent that the issue involves the sufficiency of the evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt, the evidence is viewed in a light favorable to the verdict, considering all favorable inferences and disregarding all evidence and inferences to the contrary. *State v. Clay,* 975 S.W.2d 121, 139 (Mo. banc 1998); *State v. Grim,* 854 S.W.2d 403, 411 (Mo. banc 1993).

A plain reading of section 565.110 indicates that to convict Porter of kidnapping under that section, the State was required to prove that the removal was "unlawful" and "without his or her consent," and for the specified wrongful purpose—*i.e.*, for "the purpose of terrorizing another."

The defense did not present evidence to contradict the basic facts presented by the State; Porter's factual evidence related only to Porter's *purpose* in the removal of the children. Accordingly, the objective facts as to the removal of the children may be considered uncontroverted for purposes of the issues before us.

Resolution of Point I is a legal issue as to the meaning of the phrase "unlawfully removes another without his or her consent." If the State's interpretation of this phrase is wrong, as Porter argues, he simply cannot, as a matter of law, be convicted of the class B felony of the unlawful removal of the children under section 565.110.

### 1. Statutory Interpretation Principles

 "The primary rule of statutory construction is to ascertain the intent of the lawmakers by construing words used in the statute in their plain and ordinary meaning." *Hyde Park Housing P'ship v. Dir. of Revenue*, 850 S.W.2d 82, 84 (Mo. banc 1993); *see* section 1.090. Where a provision's language is clear, courts will give effect to its plain meaning and refrain from applying rules of construction unless there is some ambiguity. *See M.A.B. v. Nicely*, 909 S.W.2d 669, 672 (Mo. banc 1995); *Bosworth v. Sewell*, 918 S.W.2d 773, 777 (Mo. banc 1996). When the legislature has adopted a model act, the applicable comments of the drafting committee for the model act will often be influential in the interpretation of the language of the statute adopted. *See, e.g., State v. Anderson*, 515 S.W.2d 534, 539 (Mo. banc

1974); *State v. Slavens*, 190 S.W.3d 410, 413 (Mo.App. S.D.2006).

 It is generally presumed that the legislature intended "that every word, clause, sentence, and provision of a statute have effect." *Hyde Park*, 850 S.W.2d at 84. A penal statute must be construed with "a degree of strictness commensurate with the severity of the penalty it imposes"; and when the penalty is severe, one cannot be convicted "unless his acts come within both the letter and the spirit of the law." *Bullington v. State*, 459 S.W.2d 334, 341 (Mo.1970).

### a. "Unlawfully" in 565.110

Porter's primary attack on his conviction under 565.110 for traditional kidnapping is based on the word "unlawfully" in the statute. Section 565.110 does not define the word "unlawfully." Porter argues on appeal that the word "unlawfully"—an adjective that modifies the word "removes" (and also the word "confines")—has a meaning that is separate and distinct from the wrongful purposes enumerated in section 565.110.1(1)-(5). Porter says that his removal of the children was not "unlawful" because his legal right to have the children was equal to that of the mother. In response, the State argues that the word "unlawfully" in the statute does not have substantive content other than being a reference to the specified wrongful purposes of a removal. The State thus says that a showing of the wrongful purpose satisfies the requirement of showing that the removal was "unlawful."

### 2. Appellant's Contention: "Unlawfully" Refers to Lack of Legal Privilege to Interfere with Another's Liberty

Porter's attorney says the word "unlawfully" has a distinct legal meaning and analogizes this statute to the burglary statutes, which provide that a crime is commit-

ted if one "knowingly enters *unlawfully* or knowingly remains *unlawfully* " in a building "for the purpose of committing a crime therein." Sections 569.160 & 569.170. (Emphasis added.) Thus, a thief who enters a retail store during normal business hours is not guilty of burglary (because he did not enter "unlawfully") even though the thief entered with an unlawful purpose—to commit a theft. By the same token, a person who enters his own home for the purpose of committing a domestic assault therein has not committed a burglary in entering (because the entry was not "unlawful"), though that person intends to commit a crime. *See* 13 Am. Jur.2d *Burglary,* section 40 (2000); *see State v. Rains,* 537 S.W.2d 219, 226 (Mo. App.1976). The word "unlawful" in the burglary statutes refers to the actor's lack of lawful authority or privilege to enter or remain. *See* section 569.010(8). Thus, Porter suggests that "unlawfully" in the kidnapping statute (565.110) similarly refers to the lack of privilege or authority to interfere with someone else's liberty.

### 3. The State's Contention: The Removal was "Unlawful" Because the Purpose was Unlawful

The State, in contrast, argues that Porter's removal of his children in this case was unlawful merely because his purpose was unlawful. The State argues that the "lawfulness" of the removal turns entirely on the defendant's purpose for removing the child. The State says that one can dispense with the notion that there is any other substantive content to the word "unlawfully" in the statute. If the defendant has not engaged in any expressly forbidden purpose (such as to gain ransom or to terrorize), says the State, the removal is "naturally deemed lawful." If the removal is for one of the proscribed purposes (such as to terrorize), then the removal is deemed unlawful. The State adds that it "makes no sense" to distinguish between the unlawful removal of a child and the unlawful purpose of the removal. The State says that once there is an unlawful purpose, "there is no way to render the removal lawful."

The State fails to present any statutory or case authority for its argument. The State also does not recognize that Missouri statutes have traditionally described the crime of kidnapping as requiring, *in addition to a wrongful purpose,* an *unlawful* removal or confinement (or one "without lawful authority"). Missouri has had statutory language forbidding kidnapping since 1825. The current statute (565.110) was adopted in 1977, but our kidnapping statutes have for many decades required *both* the concept of an unlawful act *and* that of a wrongful purpose or intent. The language of the former sections 559.230 and 559.240 (one statute going back to 1825, one to 1901) included, *inter alia,* the requirement that the defendant have acted "without lawful authority" in seizing or otherwise restraining the liberty of another. *See Bullington,* 459 S.W.2d at 336–37.

There is also considerable case authority supporting Porter's argument. The Missouri Supreme Court, for instance, has recognized and enforced the general rule that a parent entitled to custody cannot be convicted of kidnapping even if he or she has a purpose that is specified as improper under the statute. *State v. Huhn,* 346 Mo. 695, 142 S.W.2d 1064, 1067 (1940). In *Huhn,* the mother of the child had separated from the father. The father removed the child with the purpose of forcing his wife to return to him. The Court stated:

Although we have no decision on the point involved in this State, the rule is established throughout the United States that where the father and mother are equally entitled to custody of their minor child, the father does not commit

the crime of kidnapping by taking exclusive possession of it [authorities omitted].

*Id.* The Court held that the father had equal custody rights with the mother and, therefore, could not be convicted of "felony enticement" of his child "with intent to detain or conceal such child from its parent or guardian or other person having the lawful charge of such child." *Id.* at 1065. The Court in *Huhn,* however, acknowledged that when a court order has limited the custody rights of a parent, the rule is "otherwise." *Id.* at 1067.

In more recent years, a traditional kidnapping case decided under section 565.110 expressed the law in a way that is consistent with *Huhn.* The court there recognized that a father with equal custody rights could not be prosecuted for traditional kidnapping; but where there is a restriction on his custody rights and he has a prohibited purpose, he can be convicted. *State v. Vitiello,* 791 S.W.2d 837 (Mo.App. W.D.1990). In that case, the father was convicted of kidnapping under 565.110 (along with burglary) after he took his own daughter from the child's mother, his former girlfriend, stating that he would not return the daughter unless the mother agreed to marry him. *Id.* at 838. On appeal, the father argued that the removal was lawful because he was the natural father and had custody rights. *Id.* at 839. The court rejected this argument on the basis that under section 211.021(4), the mother had a superior right of custody because the parties had not been married. *Id.* Thus determining that the father's custody rights were not equal to the mother's, the court affirmed the conviction. The court, perhaps mindful of *Huhn,* obviously believed that if the father's custody rights *had been* equal, there would have been a problem with his conviction of kidnapping under 565.110. The court rested its decision on the father's lack of equal custody

rights, concluding that the removal of his daughter was unlawful.

In the federal kidnapping statute, 18 U.S.C. section 1201, there is an express exemption for parents. In other jurisdictions, while there is usually no *express* exemption for parents, the courts generally, with few exceptions, recognize that parents have a lawful right to control the liberty of their children and that such control cannot be "unlawful" unless there is a legally effective court order limiting such rights. *See Huhn,* 142 S.W.2d at 1067. *See also* Annotation, *Kidnapping—Taking of Own Child,* 20 A.L.R.4th 823, section 3 (1983); 51 C.J.S. *Kidnapping* sections 11, 31 (2003); *Anderson v. Cramlet,* 789 F.2d 840, 844 (10th Cir.1986); *State v. LaCaze,* 95 Wash.2d 760, 630 P.2d 436 (1981).

Another Missouri case demonstrating that the word "unlawfully" does not merely refer to the wrongful purpose is *State v. Keeler,* 856 S.W.2d 928, 930 n. 4 (Mo.App. S.D.1993). There, the court recognized that the defendant's failed attempt to get a nine-year-old girl into his car was an attempt at an *unlawful* removal—because the defendant had no authority or permission to take charge of someone else's child—although the *purpose* of the defendant was not shown. *Id.* at 930–31. The court noted that the State had proven a case of attempted false imprisonment, which requires an attempt to perform an *unlawful* removal or confinement, but does not require a showing of purpose. *Id.* at 931. This case illustrates that there can be an "unlawful" removal without evidence of a wrongful purpose.

The State's argument that the word "unlawfully" refers only to the wrongful purposes is further undermined by the fact that in 2004 the Missouri General Assembly adopted another kidnapping statute ("child kidnapping") creating a class A fel-

ony that also prohibits the "unlawful removal" of a child under fourteen without the consent of the parent or guardian. Section 565.115, RSMo Cum.Supp.2006. The statute differs from 565.110 in several respects, including the fact that it does not contain a list of wrongful purposes for the removal. Because there are no specified wrongful purposes, and yet the adjective "unlawful" is still used, this statutory design seems to weaken the State's argument that the concept of the "unlawfulness" of the removal is tied specifically to the expressed wrongful purposes in 565.110 and has no separate meaning. Thus, there is a telling lack of statutory or case authority for the State's argument that the word "unlawfully" refers merely to the wrongful purpose of the actor.

### 4. Two Categories of Lawful Removal: (1) Legal Privilege to Remove Another; and (2) Consent to Remove Another

■ The State, nevertheless, searching for some kind of authority, notes the fact that MAI–CR 319.24, the approved jury instruction for 565.110, does not include a requirement that the court submit to the jury the issue of whether the removal was "unlawful" ("without lawful authority"). Whereas the approved instructions for "false imprisonment" and "felonious restraint" require that the jury find that the defendant acted "without authority of law," there is no similar requirement in MAI–CR 319.24. All three statutes require that the removal be both "unlawful" and without consent; the jury instruction for 565.110 is the only one lacking a submission for the element of unlawfulness. The State does not explain the inconsistency in the instructions. Yet the State argues that this omission means that 565.110 should be interpreted as *not requiring* a separate element of an unlawful removal, but as requiring only a removal of a child with a wrongful purpose. Although we do

not know the reason for the omission of the element of unlawfulness in the approved instruction, we cannot use the wording of the instruction as an excuse to affirm these convictions under 565.110. To do so on that basis would mean disregarding the overwhelming weight of the substantive law and the plain language of the statute, which indicate that the concept of unlawfulness has meaning and is an element of the offense. Where there is a conflict between an instruction and the substantive law, the substantive law must govern. *State v. Carson*, 941 S.W.2d 518, 520 (Mo. banc 1997).

Moreover, the legislature's decision to require proof of both unlawfulness and lack of consent, despite the obvious partial overlap of these concepts, follows logically from the nature of the crime of kidnapping as one that involves interference with another person's liberty. The law, of course, protects each person's right to govern his or her own movement within legal boundaries. A removal of one person by another is not lawful unless it is *with* consent or unless the status and legal privilege of the "remover" legitimizes the removal, with or without consent. Obviously, if A invites B to accompany him to a particular place, and B consents to go, there is no kidnapping, even if A has a hidden wrongful purpose, such as to steal from B. And if A is a police officer who has grounds to take B into custody, again there would be no kidnapping, regardless of the lack of B's consent. This is true because the officer would have legal privilege in the circumstances to take custody of B; and this privilege would exempt the officer from prosecution for kidnapping *even if* the officer's purpose were wrongful (such as, hypothetically, to commit battery on B). Thus, if the officer carries out the intended battery, the officer is guilty of battery, but not of kidnapping. *See* MODEL PENAL

CODE, section 3.03, 10A U.L.A. 144–45 (2001); and MODEL PENAL CODE Part II Commentaries, vol. 1, at 210 (1980); and 51 C.J.S. *Kidnapping*, section 11 (2003).

Kidnapping, therefore, concerns itself with consent *and* with legal privilege. The legal privilege to remove someone is a legal substitute for consent because the privilege will operate whether or not there is consent. When the "remover" has no legal privilege, the lawfulness of the removal will depend entirely on the issue of consent. But when there *is* a privilege, the existence of privilege entirely governs the issue of lawfulness. Accordingly, there is nothing inherently unusual about the wording of the statute. It makes perfect sense for the statute to make a removal a crime only when it is both "unlawful" and "without consent" (and for a specified wrongful purpose), though the two concepts of unlawfulness and lack of consent may overlap in a given case.

## 5. Missouri Maintains a Distinction Between the Concept of Unlawfulness and the Concept of Lack of Consent

The Model Penal Code (MPC) of the American Law Institute (ALI) is also helpful in understanding the interplay, and yet the difference, between unlawfulness and lack of consent. In 1973, ALI proposed some major changes in state criminal codes. When our legislature adopted section 565.110 in 1977, the legislature borrowed substantially from the more basic language of section 212 of the MPC. The MPC proposed simply:

A person is guilty of kidnapping if he unlawfully removes another . . . or if he unlawfully confines another . . . with any of the following [wrongful] purposes . . . . [setting out purposes roughly similar to those in 565.110].

Because of this connection, the Missouri courts have sometimes turned to the commentary on the MPC to help in understanding the intention behind section 565.110. *See Flores v. State*, 186 S.W.3d 398, 400–01 (Mo.App. E.D.2006); *Spier v. State*, 174 S.W.3d 539, 542 (Mo.App. E.D. 2005); *State v. Slavens*, 190 S.W.3d 410, 413 (Mo.App. S.D.2006) (applying MPC comments, found exemption from prosecution for parents who, motivated by affection, remove a child from another parent or from a state agency).

The MPC took a distinctive approach by redefining the word "unlawfully," in an effort to largely divest the word of a connotation of lack of legal privilege. The MPC defined the word "unlawfully" as "accomplished by force, threat, or deception, or . . . without the consent of a parent." MODEL PENAL CODE, section 212.1, 10A U.L.A. 423 (2001). The MPC chose to exempt public officers in a separate section (MPC, section 3.03). The MPC did not need to include parents in that separately expressed exemption because the MPC then, in turn, defined "consent," in the case of a child, as requiring the consent of *the parent.* The commentary on the MPC noted that because the definition of consent includes the consent of a parent,

if the actor is himself a parent . . . , the offense of kidnapping cannot be made out . . . because the actor himself in such case is capable of giving the consent that undermines the appropriate application of the kidnapping offense.

MODEL PENAL CODE Part II Commentaries, vol. 1, at 254 (internal quotes omitted). Thus, the MPC *also* deferred to the parents' lawful right to control the movement of their children, thereby causing the MPC to have the same practical effect as section 565.110, though by a different means.

Missouri exempts public officers *and* parents with custody rights from prosecu-

tion for traditional kidnapping by explicitly retaining within 565.110 itself the requirement that a removal be "unlawful" as well as without consent. It is presumed that "every word, clause, sentence, and provision of a statute have effect." *Hyde Park,* 850 S.W.2d at 84. If the State's arguments were correct, there would be no exemption under Missouri law for either parents or public officers, and yet the General Assembly would have allowed the plain language of the statute to read as though there were. We cannot accept that assertion here.

We are not the first court to have to deal with this issue based on the presence or absence of the concept of unlawfulness in the statutory language of a kidnapping statute. The Supreme Court of Kansas reached a similar conclusion about the meaning of the concept of unlawfulness in the context of a kidnapping statute when it held that the phrase "without lawful authority" in the traditional kidnapping statute exempted parents with custody rights from prosecution. In *State v. Carmichael,* the Court, after a change in the statute, *upheld* a conviction of a father for kidnapping, specifically *relying on* the fact that the legislature had amended the statute [K.S.A. 21–3420] to *remove* the phrase "without lawful authority." 240 Kan. 149, 727 P.2d 918 (1986), *rev'd in part on other grounds by Carmichael v. State,* 255 Kan. 10, 872 P.2d 240 (1994). In view of the statutory amendment, the Court reasoned, the legislature *must have intended* to make the statute generally applicable to all, including parents. *Id.* at 927. Like the court in *Carmichael,* we conclude that the operative effect of the word "unlawfully" in 565.110 is to create within the statute itself an express exemption from pros-

ecution for those having legal privilege to remove another person.

In sum, a Missouri parent with no specific legal restrictions on his or her rights of custody has legal authority to remove his or her own child (and therefore does not violate 565.110), subject only to general limitations imposed by another law, such as by the *parental kidnapping* statute.[3] A parent can be convicted of *traditional kidnapping* in Missouri if: (1) there is a restriction on that parent's right to custody; and (2) he or she removes a child from the lawful custody of another without the permission of the lawful custodian; and (3) the removing parent intends one of the expressly prohibited purposes. *See Vitiello,* 791 S.W.2d at 838–40. If a removing parent's motives are grounded only in parental affection, there can be no conviction of traditional kidnapping (though the parent could possibly be convicted of a lesser offense such as parental kidnapping or interference with custody). *See, e.g., Flores,* 186 S.W.3d at 401. In this case, there was clear evidence that Porter had a wrongful purpose to terrorize Tina Porter. The dispute was about whether the taking was "unlawful."

### 6. Porter's Custody Rights Were Not Restricted

At the time the children were removed, while it appears that there was an order of protection that had been issued in favor of Tina, the parties agree that it did not restrict Porter's custody rights with the children. In any event, Porter was allowed to have the children by agreement with Tina. The dissolution decree that later granted custody of the missing children to

---

**3.** The State does not argue that it proved that Porter removed the children from the state of Missouri in violation of section 452.310.3 (in the statutory chapter dealing with dissolution of marriage). We need not address any issue related to the possible applicability of that statute to the issue of "unlawfulness" in this case.

Tina Porter was not entered until after the removal and concealment of the children had taken place—long after Porter had been formally charged with engaging in unlawful actions on June 5 and 6, 2004, and while he was confined and awaiting trial on the charges of which he was later convicted. Porter was not at any time charged with a violation of section 565.110 for actions *after* the dissolution decree was entered, nor does the State attempt to base any argument on the later restriction of Porter's custody rights. The lack of restriction on Porter's custody rights *at the time of the alleged kidnapping* makes a crucial difference here. As discussed above, we believe the General Assembly did not contemplate or intend that the charge of traditional kidnapping under 565.110 could be applied to a parent with full rights of custody. *See Huhn,* 142 S.W.2d at 1065–66; *Vitiello,* 791 S.W.2d at 839. Indeed, the General Assembly, in 1988, adopted section 565.153 ("parental kidnapping"), a statute that clearly *could* be applied to parents who have full custody rights themselves but, without good cause, interfere with the custody rights of the other parent.

### 7. In the Case of a Child, the Relevant Consent Is that of the Parent

The State makes a final related argument concerning lack of consent. The State argues that, because the kidnapping statute refers only to "his or her consent" (that is, the victim's), Porter's removal of the children was not lawful without *their* consent. Yet, the children were under fourteen and thus could not consent to their own removal. *See* section 565.100. Therefore, the State argues, Porter could not lawfully take the children. We disagree. This case did not involve the enticement or forcible removal of a child by a stranger, where the parental lack of consent is obvious (as in *Keeler,* 856 S.W.2d at 931). In contrast, this case involved a removal of Porter's own children, as to whom he had equal rights of custody. We think it is obvious that the General Assembly, like the drafters of the MPC, understood that for this reason, when the victim is a young child, the pertinent lack of consent is "that of a parent or other appropriate person." *See, e.g.,* MODEL PENAL CODE, Explanatory Note for sections 212.1–212.5, 10A U.L.A. 421–22 (2001). Indeed, in a 2004 statute exclusively addressing *child* kidnapping, the General Assembly said exactly that, specifying that the pertinent lack of consent was that of the parent or guardian. Section 565.115, RSMo Cum.Supp.2006.

### c. Summary as to Point I

For the foregoing reasons, this court has no option but to vacate Porter's convictions of both counts of kidnapping under section 565.110 (one for Lindsey and one for Samuel). To do otherwise would require the court to overstep its authority and ignore an element of the crime of kidnapping-proof of an unlawful taking. It is up to the legislature, not this court, to determine the elements of a crime. *Bullington,* 459 S.W.2d at 336–37. In any event, this ruling under section 565.110 will not affect Porter's convictions under section 565.153; nor should it affect any other offenses for which he may be prosecuted.

Because our ruling on Point I does not dispose of all issues asserted by Porter (though it does moot Point II, dealing with instructional error), and because Porter also seeks a new trial as to the counts under section 565.153 (the parental kidnapping statute), we are not yet finished with our review, but must proceed with examination of Points III through V.

## II. Porter's Silence

In Point III, Porter argues that the trial court erred in considering his silence concerning the whereabouts of the children in assessing punishment. The court sentenced Porter to the maximum term of imprisonment on each count. On appeal, Porter contends that this sentence violated his right to due process of law, to a fair trial, to remain silent, and not to be penalized for his silence, as guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and equivalent provisions of the Missouri Constitution. Porter argues that he had a constitutional right to remain silent and was exercising that right. He says it was, therefore, improper for the court to give him the maximum sentence explicitly for that reason.

Although we must vacate the convictions and sentences under 565.110, and to that extent this point is moot, Porter is nevertheless entitled to challenge the imposition of the maximum sentences of the two counts under 565.153 (four years for each count, the maximum for a class D felony).

Review of a trial court's sentencing decision is for an abuse of discretion. *State v. Palmer*, 193 S.W.3d 854, 857 (Mo. App. S.D.2006). An abuse of discretion occurs when the trial court's action is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful consideration. *Id.* at 857–58. "[A] trial court does not err in sentencing when it considers other factors aside from a defendant's assertion of his or her constitutional right, so that a comment on the defendant's assertion of rights is not the determinative factor in imposing sentence." *Id.* at 857. At sentencing here, the trial court mentioned the great harm caused by the appellant's crimes, a harm exacerbated by the fact that no one other than Porter knew the fate of the children.

The court considered the impact the crime must have had on the children, and the suffering that had been caused to Tina Porter and to others. The court also observed that the appellant had shown absolutely no remorse, a fact the court considered to be demonstrated strongly by Porter's "unwillingness to tell the truth about what had happened to his children." Porter argues this constituted an improper increase in punishment based on his right to remain silent.

This court disagrees. Porter *did* make statements concerning the whereabouts of the children-statements that, as it happened, were discovered to be false. Aside from the fact that the making of such statements may have waived any right to remain silent in this context, Porter also failed to raise the issue of his right to remain silent at the time of sentencing when he heard the trial court's comments. Thus, Porter's claim is not preserved for appellate review. *See State v. Foster*, 854 S.W.2d 1, 5 (Mo.App. W.D.1993). To warrant relief for an unpreserved claim of error, an appellant must demonstrate that the error was open, plain, and obvious, and that it so substantially affected his rights that a manifest injustice or miscarriage of justice would inexorably result if the error were left uncorrected. *See Deck v. State*, 68 S.W.3d 418, 427 (Mo. banc 2002), *rev'd on other grounds by Deck v. Missouri*, 544 U.S. 622, 125 S.Ct. 2007, 161 L.Ed.2d 953 (2005). The defendant bears the burden of establishing not only that there was plain error but also that there was a manifest injustice or miscarriage of justice. *State v. Mayes*, 63 S.W.3d 615, 624 (Mo. banc 2001).

Porter can demonstrate neither plain error nor injustice of any sort. There existed an abundance of aggravating factors here. Moreover, because the parental kidnapping convictions involved *concealing*

the children in violation of 565.153, Porter's refusal after arrest to produce the children or to reveal their whereabouts was simply the continuation and aggravation of the offense with which he was charged, easily justifying the sentence. Porter's continued concealment was relevant to show that Porter lacked remorse, which was a relevant consideration. It was also relevant to the fact that, as far as the judge knew at that time, the children were being progressively damaged as each day of separation expired. Considered in context, it is clear that it was the continued concealment that the judge considered, not Porter's silence *per se*.

In sum, here there was no timely invocation of constitutional principle, and no indication of any error or abuse of discretion in the sentencing. Point denied.

### III. Drug References

Porter next complains in his Points IV and V about references to his drug involvement. He claims that the trial court had a duty, *sua sponte,* to intervene to protect him from prejudicial testimony when Tina Porter testified that Porter, after removing the children, told her that he had rented a U–Haul to "move some methamphetamine." Porter contends the testimony was inadmissible evidence of uncharged crimes. He asserts that it played a decisive role in the jury's determination of guilt.

There was no objection to Tina Porter's testimony about Porter's statement of "moving some methamphetamine." There was also no objection or claim of error in appellant's motion for new trial. Accordingly, this claim is not preserved for appeal. The testimony came in when Tina Porter was testifying concerning her conversations with Porter in the days after the children were withheld from her. She was describing the circumstances of her

communications and her efforts to try to determine where the children might be.

There was no need for the court to intervene to avoid a miscarriage of justice or manifest injustice. The jury and everyone else knew that the issues on trial were of such magnitude as to incomparably overshadow suggestions of illicit drug activity. It was already clear, and undisputed from the evidence, that Daniel Porter had concealed the children from their mother and was defiant and unrepentant about it. There also was no dispute about the basic facts. There was no risk that the jury's determinations would be influenced by the mention of the methamphetamine.

The same lack of risk exists with regard to Porter's Point V, in which he contends the trial court erred and abused its discretion in overruling the motion for a mistrial after an investigator testified that the truck, at the time of his arrest, contained two glass methamphetamine pipes. Porter objected. His attorney asked for a mistrial declaration. The trial court sustained the objection, but denied the request for a declaration of a mistrial. Defense counsel sought no other relief.

"[A] mistrial is a drastic remedy that should be used only when necessary to cure grievous prejudice, and in extraordinary circumstances where the prejudice to the defendant cannot be removed by any other means." *State v. Myers,* 997 S.W.2d 26, 35 (Mo.App. S.D. 1999). "A limiting instruction may be sufficient to avoid prejudice, and the trial court is in the best position to determine the impact on the jury." *Id.* Here, the trial court evaluated the prejudicial effect of the testimony and perceived no extraordinary grounds for granting the drastic remedy of a mistrial. Porter's attorney expressly declined any other relief. The fact that a defendant limits his request for relief to that of a mistrial rather than

making a request for a less drastic corrective action cannot aid him. *Id.*

Evidence suggesting Porter's illegal drug activity was already in the case, having come in without objection. In any event, in light of the overwhelming evidence of appellant's guilt, it cannot be said that Porter was prejudiced by testimony about his possible association with drug crimes with which he was not charged. In view of the other evidence presented, and the strength of the State's case, there was no risk that the comment in question played a decisive role in the determination of guilt. *See State v. Clark,* 112 S.W.3d at 95, 100 (Mo.App.2003).

There are no evidentiary rulings necessitating a new trial as to the charges under section 565.153. Points III through V are denied.

### Summary and Conclusion

For the reasons stated in our discussion of Point I above, we think it is clear that the General Assembly, in adopting 565.110 (traditional kidnapping), did not intend for the statute to be applied to parents with full rights of custody who violate no legal restrictions in removing a child, regardless of a wrongful intent in doing so. The General Assembly limited criminal liability under 565.110 to cases in which the removal of a child is not only without the consent of a proper custodian, but also in which the removal is "unlawful" due to lack of the remover's legal privilege, and in which the remover has one of the specified wrongful purposes.

While the legislature did anticipate that a parent would sometimes improperly remove or conceal children, our statutory scheme indicates that the legislature tended to assume that parents who take and conceal their own children would have reasons other than the specified wrongful purposes listed in 565.110. The General Assembly would also have tended to believe

that a parent is more likely than a stranger to protect the children. *See State v. Brandenberg,* 232 Mo. 531, 134 S.W. 529, 530 (1911); *State v. Slavens,* 190 S.W.3d 410, 413 (Mo.App. S.D.2006) (commenting on why the crime of interference with custody has a different penalty structure than that applicable to traditional kidnapping). Accordingly, in adopting the statute of parental kidnapping under 565.153, our General Assembly classified the crime as a class D felony rather than a felony with a classification carrying a greater penalty. No one could easily have anticipated the facts that were presented at the trial of this case.

The great concern for the welfare of Lindsay and Samuel that underlay the trial of this very disturbing and extremely unusual case cannot cause a conviction of Porter under a law he did not break. This decision on appeal reflects nothing other than our duty to uphold the straightforward legal meaning of the plain language of section 565.110. We are compelled by sound interpretation and legal principle to conclude that the judgments of conviction and sentence for the two counts under section 565.110 cannot legally be upheld.

There was, however, no error in Porter's conviction of two counts of the class D felony of parental kidnapping; and today's ruling should have no effect on his responsibility for any other crimes for which he may be prosecuted.

The convictions and sentences under section 565.110 (traditional kidnapping) are hereby vacated; the convictions and consecutive sentences under 565.153 (parental kidnapping) remain in effect.

LAURA DENVIR STITH, Sp.J, P.J., and THOMAS H. NEWTON, J., concur.