

# In the Missouri Court of Appeals
# Eastern District

## DIVISION TWO

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED112566 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of Pike County |
| vs. | ) | Cause No. 23PI-CR00207-01 |
| | ) | |
| RICHARD E. CALVIN, | ) | Honorable Michael R. Jacobs |
| | ) | |
| Appellant. | ) | FILED: May 27, 2025 |

## Opinion

Richard E. Calvin (Calvin) appeals from the trial court's judgment following jury convictions on burglary in the first degree and attempted kidnapping in the third degree. Calvin raises one point on appeal. Point One argues the evidence was insufficient to deny his motion for judgment of acquittal and sustain the jury's verdict on the count of first-degree burglary, which was charged based on the underlying offense of kidnapping, because the evidence did not demonstrate Calvin's intent to forcibly remove Victim[1] from her home. Because overwhelming evidence supports the jury's verdict, we deny the point. Accordingly, we affirm the trial court's judgment.

---

[1] Names are redacted pursuant to § 509.520, RSMo (Cum. Supp. 2023).

## Background

Viewed in the light most favorable to the verdict, the relevant facts are as follows:[2]

The State charged Calvin with burglary in the first degree (Count I) and attempted kidnapping in the third degree (Count II) arising out of Calvin's unlawful entry into Victim's home in the middle of the night on May 19, 2023.

Victim, Victim's father, and Victim's two children were in their split-level home, in which the front door opens to a small landing with access to the downstairs and upstairs areas of the home. The front door provides the only entry and exit point. The residence is located in wooded rural area.

Around one o'clock in the morning, Victim's Friend came to retrieve a stray dog chained to Victim's front porch. Victim had asked Friend to retrieve the dog, and while on the front porch, Friend noticed Calvin. Calvin was approaching from the woods behind Victim's house and he was soaking wet. Calvin stood in the driveway and asked Friend about Victim, stating that he needed Victim to come with him to save Victim's ex-boyfriend because he was being eaten by werewolves. Friend knocked on one of the front windows, prompting Victim to come outside to see what was happening. Victim recognized Calvin, as they were long-time neighbors.

Calvin repeatedly insisted that he needed Victim to come with him to deal with the werewolves. Calvin indicated it was for Victim's own safety. Victim did not want to go with Calvin and she told Calvin to leave several times, but Calvin remained on her property. Friend offered Calvin a ride, which he refused. Victim then called Calvin's father on the phone to pick

[2] *State v. Scott*, 676 S.W.3d 336, 339 (Mo. App. E.D. 2023) (internal citation omitted).

Calvin up, and Calvin became increasingly persistent, demanding that Victim listen to what he was saying. Victim's father, who was also aware of the situation, called the police.

Victim and Friend both retreated inside the home. Calvin attempted to follow them inside. Calvin tried to push his way through the front door, but Friend held it shut while bracing himself against the railing of the stairs. Calvin told Victim he wanted some clean clothes. Becoming more and more agitated, Calvin continued to push on the door. Victim repeatedly warned Calvin that he was not coming into the house and that she was not going anywhere with him. Victim went downstairs to her basement to retrieve her firearm. After ten minutes, the stairwell railing supporting Friend broke, allowing Calvin to shove his way inside.

Returning from the basement, Victim saw Calvin start to enter her home. Calvin had positioned himself against the door in a way that blocked anyone else from leaving. Victim positioned herself near the top of the staircase in order to stop Calvin if he decided to go downstairs after her or upstairs after her family. When Calvin entered her home after repeated warnings to leave, Victim shot at Calvin. Her shot missed, but caused Calvin to fall back outside of the door. Calvin immediately came back inside the home, now even more agitated. He grew angrier and began name calling Victim. Victim told Calvin she was going to shoot him again. Calvin started down the stairs toward Victim and, when Calvin was about an arm's length away, Victim shot him in his side. Calvin dropped back and laid on the porch.

Calvin's father took him to the hospital before the police officers arrived. The officers investigated the scene and noted that the door was chipped from a struggle and the stairwell railing was damaged. An officer asked Friend why he thought Calvin had acted this way, and Friend answered: "I don't know. To kidnap her and get her outside? I don't know."

Police officers arrested Calvin shortly after his release from the hospital, and Calvin was indicted on first-degree burglary and attempted third-degree kidnapping. On Count I, the State claimed Calvin knowingly entered unlawfully into Victim's home while she was present in the home for the purpose of committing kidnapping therein. On Count II, the State alleged Calvin committed attempted third-degree kidnapping by knowingly attempting to restrain Victim unlawfully and without Victim's consent so as to substantially interfere with Victim's liberty.

The case proceeded to trial. The State called several witnesses, including Victim and Friend, who testified to the above events. Calvin did not testify or call any witnesses in his defense. At the close of the State's evidence, Calvin moved for a judgment of acquittal which the trial court denied and afterwards submitted the case to the jury. The jury found Calvin guilty as charged. Subsequently, Calvin filed an amended motion for judgment of acquittal or in the alternative a new trial, which the trial court also denied. The trial court sentenced Calvin to ten years in prison for burglary and six months in jail for attempted kidnapping, with the sentences to run concurrently. Calvin now appeals.

<u>Standard of Review</u>

When a defendant challenges the sufficiency of the evidence, "this Court does not weigh the evidence but rather accepts as true all evidence tending to prove guilt together with all reasonable inferences that support the verdict, and ignores all contrary evidence[] and inferences." *State v. Lehman*, 617 S.W.3d 843, 846–47 (Mo. banc 2021) (internal quotations omitted). "We review the denial of a motion for judgment of acquittal under the same standard of review used in reviewing a challenge to the sufficiency of the evidence to support a jury's guilty verdict." *State v. McClain*, 685 S.W.3d 35, 38 (Mo. App. E.D. 2024) (internal quotation omitted). If any jury reasonably could have found the defendant guilty beyond a reasonable doubt, then the evidence was sufficient to support the verdict. *Id.* at 38–39 (quoting *State v.*

4

*Minor*, 648 S.W.3d 721, 736 (Mo. banc 2022)); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (internal citation omitted).  The Court "does not act as a 'super juror with veto powers,' but gives great deference to the trier of fact."  *McClain*, 685 S.W.3d at 39 (quoting *State v. Nash*, 339 S.W.3d 500, 509 (Mo. banc 2011)).

Discussion

**I.      The trial court did not err in denying Calvin's motion for acquittal and accepting the jury's verdict on first-degree burglary**

In his sole point on appeal, Calvin argues the trial court erred in denying his motion for acquittal and accepting the jury's verdict on first-degree burglary because the State did not prove he had the necessary intent to commit the underlying offense[3] of kidnapping beyond a reasonable doubt.  We hold the State adduced sufficient evidence at trial for the jury to convict Calvin as charged.

The Due Process Clause of the Fourteenth Amendment to our federal Constitution and the Missouri Constitution requires the State to prove every element of a crime beyond a reasonable doubt.  U.S. CONST. amend XIV, § 1; MO. CONST. art. I, § 10; *State v. Peeler*, 603 S.W.3d 917, 921 (Mo. App. E.D. 2020) (citing *Jackson*, 443 U.S. at 314–15).  Because there is rarely direct evidence of the defendant's intent, juries may rely on circumstantial evidence to infer the requisite intent element.  *State v. Elledge*, 673 S.W.3d 826, 830 (Mo. App. W.D. 2023) (quoting *State v. Lammers*, 479 S.W.3d 624, 633 (Mo. banc 2016)).  Reasonable inferences of intent arise from the surrounding facts, "such as the defendant's conduct before the act, from the act itself, and from the defendant's subsequent conduct."  *Id.* (internal quotation omitted).

---

[3] "Offense means any felony or misdemeanor."  § 556.061(35) (internal quotation marks omitted).  All statutory references are to RSMo (2016).

The State charged Calvin with two counts: Count I for first-degree burglary with the intent to commit the offense therein of kidnapping and Count II for attempted third-degree kidnapping. Calvin solely appeals from the burglary conviction. We therefore consider the elements of first-degree burglary as charged based on the applicable statute:

> A person commits the offense of burglary in the first degree if he or she knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure *for the purpose of committing an offense therein*, and when in effecting entry or while in the building or inhabitable structure or in immediate flight therefrom, the person or another participant in the offense:
> . . .
> (3) [t]here is present in the structure another person who is not a participant in the crime.

§ 569.160.1(3) (emphasis added).

Therefore, the State had to prove that Calvin knowingly entered or remained unlawfully for the purpose of committing kidnapping therein. *See id.*; *see e.g., State v. Todd*, 707 S.W.3d 629, 633–34 (Mo. App. W.D. 2025) (internal citation omitted) (holding the State provided sufficient evidence to convict the defendant of attempted first-degree burglary with the underlying offense of stealing because the defendant saw items of value, such as a large television, inside the victim's home); *State v. Vitiello*, 791 S.W.2d 837, 839 (Mo. App. W.D. 1990) (stating a defendant's "erratic and demanding behavior" such as his forcible entry into the victim's home and threats to take away his child from the victim, who had custody of the child, sufficiently supported the jury convicting him of first-degree burglary with the purpose of committing kidnapping). The State did not have to prove Calvin actually committed the offense of kidnapping but rather that he had the intent to do so. *State v. Allen*, 508 S.W.3d 181, 186 (Mo. App. E.D. 2017) (internal citation omitted). Instead, the State only needed to supply sufficient evidence that when Calvin unlawfully entered Victim's home, his conduct before and during the entry created a reasonable inference that Calvin intended to kidnap Victim. *See id.*

6

("Circumstantial evidence alone can be sufficient to support a conviction, and the evidence need not demonstrate the impossibility of innocence.") (internal citation omitted). Calvin concedes the State adduced sufficient evidence that he knowingly unlawfully entered Victim's house, but he disputes whether he did so with the purpose to commit kidnapping therein.

Calvin argues the State did not produce sufficient evidence that he had the intent to commit the offense of kidnapping as he did not have the "conscious object" to remove Victim from her home.[4] Calvin further asserts the State failed to show he shifted from attempting to convince Victim to accompany him willingly to threatening Victim if she refused to consent. We disagree, as a jury reasonably could infer from the circumstantial evidence that when Calvin knowingly unlawfully entered and remained in Victim's home, he did so with the purpose to commit kidnapping. *See* § 565.110(1); *see also Vitiello*, 791 S.W.2d at 839 (internal citation omitted).

Specifically, Calvin demanded Victim come with him to fight werewolves, and when it became apparent to Calvin that Victim would do no such thing, Calvin only became more insistent. When Calvin's attempts to convince Victim to come with him failed, he became increasingly agitated and violently forced his way into Victim's home not once, but twice. Calvin lunged at Victim despite her clear and unambiguous statements that she was not going

---

[4] Calvin claims the State needed to prove he had the intent necessary for first-degree kidnapping, which requires the State to provide evidence Calvin purposefully or had the "conscious object" to kidnap Victim. *See* § 562.016(2) (defining purposefully); *see* § 565.110(1) (providing the elements of first-degree kidnapping). Calvin points to the jury instruction on the burglary charge to support his claim as the State listed the elements of first-degree kidnapping. However, sufficiency of evidence review "does not rest on how the jury was instructed." *State v. Jackson-Bey*, 690 S.W.3d 181, 186 (Mo. banc 2024) (internal quotation omitted). "Instead, this Court reviews 'whether there is sufficient evidence to support the charged crime, based on the elements of the crime as set forth by statute and common law and the evidence adduced at trial.'" *Id.* (internal quotation omitted). The State in its indictment did not specify the degree of kidnapping for the underlying offense of Count I nor were they required to, and most importantly Calvin does not challenge the sufficiency of the indictment. *See State v. Colville*, 687 S.W.3d 637, 639 (Mo. banc 2024) (explaining a defendant must show the charging document does not allege the essential elements of the offense and fails to clearly apprise the defendant of the underlying facts) (internal quotation omitted). In reviewing the sufficiency of an indictment, Missouri courts look only to the document itself, not facts or evidence. *Id.* (internal citations omitted).

anywhere with him and her warnings that he would be shot if he tried to force her to go with him. After Victim shot at Calvin the first time, he angrily called Victim names and rushed towards her. Even if Calvin's subjective intent was to conscript Victim to help in a fantastical fight, his actions objectively demonstrated an intent to forcibly remove Victim from her home. Like the defendant in *Vitiello*, Calvin's "erratic and demanding behavior," that resulted in damage to Victim's home, illustrated a shift from Calvin trying to convince Victim to come with him willingly to Calvin intending to kidnap Victim. *See Vitiello*, 791 S.W.2d at 839 (internal citation omitted); *see also Todd*, 707 S.W.3d at 633 (internal citation omitted). Coupled with Friend's testimony that he thought Calvin behaved this way to kidnap Victim, this evidence thus provides a jury a sufficient basis to infer Calvin knowingly entered Victim's home unlawfully with the purpose to kidnap Victim.

Moreover, while Calvin focuses on whether the State proved he had the intent to commit kidnapping in the first degree, he does not challenge his conviction on Count II for attempted kidnapping in the third degree. Under Count II, the State proved beyond a reasonable doubt that Calvin took a substantial step towards knowingly restraining Victim unlawfully and without her consent, so as to interfere substantially with Victim's liberty. *See* § 565.130 (defining third-degree kidnapping); *see also* § 562.012 (defining an attempt to commit an offense). Calvin's unchallenged conviction on attempted third-degree kidnapping further supports our holding that the State sufficiently proved he committed first-degree burglary with the purpose to commit kidnapping therein.

Accordingly, the trial court did not err in denying Calvin's motion for acquittal or in accepting the jury's verdict on first-degree burglary. *See McClain*, 685 S.W.3d at 39 (internal quotation omitted). We deny the appeal.

## Conclusion

The judgment of the trial court is affirmed.

_Rebeca Navarro-McKelvey_
Rebeca Navarro-McKelvey, J.

Lisa P. Page, P.J. and
Virginia W. Lay, J., concur.